**Pat CANTERINO, et al., Plaintiffs,**

**and**

**The United States of America, Plaintiff-Intervenor,**

v.

**Raymond BARBER, et al., Defendants.**

**Civ. A. No. 80–0545–L(J).**

United States District Court, W.D. Kentucky, Louisville Division.

May 24, 1983.

See also, D.C., 546 F.Supp. 174.

Susan Deller Ross, Charles Ory, Terisa E. Chaw, U.S. Justice Dept., Civil Rights Div., Sp. Litigation Section, Washington, D.C., Ronald E. Meredith, U.S. Atty., Louisville, Ky., for plaintiff-intervenor.

Walker Bledsoe Smith, David A. Friedman, Anne Marie Regan, Legal Aid Soc., Inc., Leslie W. Abramson, Louisville, Ky., Claudia T. Wright, ACLU, Nat. Prison Project, Washington, D.C., for plaintiffs.

Barbara W. Jones, Linda G. Cooper, Gen. Counsel, J. Gary Bale, Dept. of Educ., Frankfort, Ky., for defendants.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

After a four week trial before the Court during May, 1982, defendant officials of the Kentucky Corrections Cabinet were found, among other things, to discriminate against women inmates with regard to vocational courses in violation of the Fourteenth Amendment's Equal Protection Clause; Title IX, Education Amendments of 1972, § 901 *et seq.,* 20 U.S.C. § 1681 *et seq.;* and the antidiscrimination provisions of the Comprehensive Employment and Training Act of 1973 (CETA), § 132(a), as amended, 29 U.S.C. § 834(a). *Canterino v. Wilson,* 546 F.Supp. 174 (W.D.Ky.1982). The Court reserved ruling as to Defendant Raymond Barber, Superintendent of Public Instruction, Kentucky Department of Education (Barber).

This matter is now before the Court as submitted on the post-trial briefs of Defendant Barber, the plaintiff-inmate class of women incarcerated at the Kentucky Correctional Institute for Women (KCIW), and the plaintiff-intervenor, the United States of America. None of the parties requested a hearing for taking additional proof nor have they submitted any additional evidence except for an affidavit of Dr. Robert Spillman, on behalf of Barber. Dr. Spillman is in charge of the Bureau of Vocational Education. His affidavit outlines possible remedial steps Barber might undertake if the corrections defendants request such measures.

The Court entered findings of fact regarding the deficiencies in the vocational education program in its July 26, 1982 opinion and order. *Canterino v. Wilson,* 546 F.Supp. at 188. A transcript of that trial is not available at this writing. However, having thoroughly reviewed the evidence, the memoranda of counsel, and the applicable law, the Court makes the following findings and conclusions.

As the Court found in its July 26 opinion, vocational education programs are offered to facilitate inmate re-integration into society. *Canterino v. Wilson,* 546 F.Supp. at 188–189. However, because all women offenders are classified to KCIW on the basis of gender, they are denied access to many vocational education programs which are available to prisoners at the eight correctional facilities for men. Of the programs which are available to females at KCIW, many are inferior in quality to the corresponding programs at the male institutions. *Canterino v. Wilson,* 546 F.Supp. at 189–190.

These programs are administered by the Bureau of Vocational Education, under an agreement with the Corrections Cabinet. *Canterino v. Wilson,* 546 F.Supp. at 188. The in-house vocational programs are federally funded under Title II of the Vocational Education Act of 1976, 20 U.S.C. § 2301 *et seq.* These funds are used by the bureau on a matching basis with funds appropriated to the Corrections Cabinet by the Kentucky General Assembly. *Canterino v. Wilson,* 546 F.Supp. at 190–191. As defined by federal regulation, these in-house vocational classes are extension centers of the Bureau

of Vocational Education's Area Schools. *Canterino v. Wilson,* 546 F.Supp. at 190. *See* 34 C.F.R. Part 100, App. B, II B (defining subrecipient), I D Note (defining vocational education center), and I D (2). KCIW and the men's center at the Kentucky State Reformatory (KSR), about fifteen miles from KCIW, are extensions of the same area school and report to the same regional director in the Bureau of Vocational Education. *Canterino v. Wilson,* 546 F.Supp. at 190.

The Court concluded in its July 26 opinion that equal protection and the provisions of the anti-discrimination statutes require that, "[t]o the extent ... opportunities are available to male inmates due to the receipt of federal funds under the cited acts, the state must offer equivalent programs in *form* as well as in substance, to similarly situated women." [Court's original emphasis]. *Canterino v. Wilson,* 546 F.Supp. at 210. While providing co-correctional programs appeared to be the obvious solution, the Court held only that, "... at a minimum, ... a consistent good faith effort must be made to include female inmates in the benefits of all programs funded in part with federal dollars." *Canterino v. Wilson,* 546 F.Supp. at 210.

In his post-trial brief, Barber does not contest the Court's findings of illegal discrimination, however, he asserts he is not liable for his participation for three reasons. First, the case is moot. Second, it has not been proven that the department engaged in intentional discrimination against the female inmates on the basis of sex. Third, it is suggested that Barber merely acquiesced in the discrimination practiced by the corrections defendants and did not directly cause any of the discrimination.

## I. MOOTNESS

Superintendent Barber argues that this Court lacks subject matter jurisdiction because this action is now moot. It is his position that the Court's July 26 opinion and order made it absolutely clear that his wrongful conduct could not reasonably be expected to recur. Dr. Spillman's affidavit;

on behalf of Barber, offers to assure the Court that

... as a result of the Court's July 26 Order and irrespective of any directive of the Court to Defendant Barber, that Defendant Barber and the Kentucky Department of Education cannot continue to fund vocational courses offered in Kentucky's correctional institutions as long as opportunities for women inmates at KCIW are not compatible with Court's July 26 order, unless such be stayed or reversed on appeal.

Spillman Affidavit at 2–3.

Dr. Spillman offers a number of possible alternative in-house vocational courses at KCIW. The Court accepts that these alternatives are offered in good faith, but they are not sufficient to render this action moot.

■ It is recognized that when the specific relief sought comes about by defendant's voluntary cessation of the challenged conduct, even when accompanied by assurances of future good conduct, the controversy is not moot unless the defendant meets a heavy burden demonstrating that there is no reasonable expectation that the wrong will be repeated. *See, e.g., City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (language of an ordinance held unconstitutionally vague, even though removed, did not preclude reenacting precisely the same provision; held not moot); *United States v. Phosphate Export Ass'n,* 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (antitrust defendant association had dissolved so they could not repeat violation as the entity and members claimed they would not repeat the challenged activity because a new regulation made it unprofitable; held not moot); *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) (defendant sued by government for holding interlocking directorships in competing corporations resigned relevant directorships and announced intention not to resume them; held not moot).

■ Dr. Spillman provides no assurance that any immediate action has been taken to voluntarily cease the challenged conduct. All that is before the Court are conditional promises of future good conduct. "[M]ere professions of intention will not suffice" to render a case moot under the doctrine of voluntary cessation. *Pullum v. Greene,* 396 F.2d 251, 256 (5th Cir.1968). Moreover, Superintendent Barber makes no promises that such programming changes would be permanent.

The Court has found significant disparities in the vocational programs available to men and women inmates in Kentucky. *Canterino v. Wilson,* 546 F.Supp. at 188–191. Barber's department is not only involved in designing these programs, but in the ultimate decision regarding program implementation. *Id.* His role exceeds mere acquiescence in the illegal discriminatory policies of the Corrections Cabinet. Barber took no action to eliminate unlawful discrimination and further failed to exercise his authority to end that discrimination by affording equal vocational courses for the women. This action is not moot.

## II. INTENT TO DISCRIMINATE

Defendants enforce a gender-based policy classifying all women offenders to KCIW where they are offered inferior vocational programs. *Canterino v. Wilson,* 546 F.Supp. at 188–190. Barber acknowledges that he is aware female inmates in Kentucky are incarcerated at KCIW *solely* on the basis of their sex; that they are barred from all male vocational courses *solely* on the basis of sex; and that they attend only the inferior courses at KCIW *solely* because of their sex. *See* Barber's Post-Trial Brief at 14. Plaintiffs, as noted in the Court's July 26 opinion, do not challenge the corrections defendants' policy of incarcerating men and women in separate institutions. They assert, however, that the legitimate policy of housing men and women in separate institutions has been applied in such a manner as to afford women an inferior opportunity to take advantage of vocational education opportunities.

■ In his defense, Barber argues that the plaintiffs and the United States have not established defendant's requisite intent to discriminate under either Title IX or the Equal Protection Clause. Barber relies upon *Cannon v. University of Chicago,* 648 F.2d 1104 (7th Cir.1981), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981), and the Supreme Court's decision in *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Neither case is applicable here because they examine facially neutral policies that were alleged to have a disparate impact. In such a case, the Supreme Court requires a showing of discriminatory intent. Intent is only at issue, however, in those cases involving a facially neutral policy with a discriminatory impact. When a classification is expressly defined in terms of gender, no such initial inquiry is mandated. *See Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 274, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979). The Supreme Court does not require such an inquiry in the context of sex discrimination in cases attacking explicit gender-based classifications. *See e.g., Mississippi University for Women v. Hogan,* —— U.S. ——, 102 S.Ct. 3331, 3336–3337, 73 L.Ed.2d 1090 (1982) (automatic exclusion of men from a women's state university); *Craig v. Boren,* 429 U.S. 190, 197–199, 97 S.Ct. 451, 457–458, 50 L.Ed.2d 397 (1976) (women permitted to purchase beer at a younger age than men); *Orr v. Orr,* 440 U.S. 268, 278–279, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306 (1979) (husbands, but not wives, could be required to pay alimony). Therefore, it is not necessary to determine intent to classify by gender when the classification itself is defined in those terms.

In holding the defendant's gender-based vocational policy in violation of constitutional equal protection and the statutory antidiscrimination provisions, the Court's July 26 opinion found that the classification by gender served no important government objective. *Canterino v. Wilson,* 546 F.Supp. at 211–212. While progress has been made since the filing of this suit, it was revealed

at trial, that the vocational programs designed by Barber's education department demonstrates a very traditional view of women and a desire to train them only for traditional women's work. *Canterino v. Wilson,* 546 F.Supp. at 189. The Supreme Court expressly rejects such a purpose as a justification for explicit gender-based classifications. *Mississippi University for Women v. Hogan,* —— U.S. ——, 102 S.Ct. 3331, 3339, 73 L.Ed.2d 1090 (1982).

### III.   CONTINGENT LIABILITY

Superintendent Barber urges the Court to shield him from liability because all he did was acquiesce in the Correction Cabinet's policy to exclude women from all formal vocational courses offered male inmates and the CETA-funded guaranteed slots for men at Jefferson State Vocational-Technical School. Even if this is true, however, the law does not allow him to approve and participate in discrimination where there is an expenditure of federal funds. *See* Title IX regulations: 34 C.F.R. 106.-31(b)(7), 34 C.F.R. Parl 100, App. B, II A, II B(2), and III A. The United States' point is well taken that these regulatory prohibitions apply both to Barber's approval of the exclusion of women attending the prison courses for men, and to their acceptance of the exclusion of women participating in the CETA-funded guaranteed slots at Jefferson. In order to receive the federal funds for this program, officials of the education department made the express assurance to the United States that they would:

> encourage and promote the enrollment of both men and women in *all programs* and courses supported under the Act and managed by the state Board and eligible recipients. [emphasis added].

Annual Program Plan for 1982 and Accountability Report for 1980, Ky. Dept. of Education, Bureau of Vocational Education, PX 170, at X (first excerpted page).

Superintendent Barber goes far beyond merely lending approval to the correction defendants' vocational programming. *Canterino v. Wilson,* 546 F.Supp. at 188–191. Plaintiffs and the United States proved that Barber's department is a joint participant with the correction defendants on the KCIW Vocational Steering Committee, the body that plans the women's vocational program. Barber's department reviews that panel's recommendations and makes the final decision as to vocational programming. Dep. Margaret Moore, 1/25/82 p. 74–75, 122–123; Dep. Gail Chandler, 11/31/81, p. 261. Superintendent Barber plays an active and direct role in the provision of the vocational education programs for both men and women. By excluding women inmates on the basis of gender from all formal vocational courses given male inmates and failing to provide women with vocational courses equal to those given men, Barber is, at a minimum, jointly liable with the correction defendants for gender-based discrimination in violation of both the Equal Protection Clause and Title IX. *See* 34 C.F.R. 106.31(a), 106.31(b)(2), 106.34, 106.35, 106.36, and 34 C.F.R. Part 100, App. B, II A(4), III A, V A, V B (all prohibiting recipients of federal funds from operating sex discriminatory programs).

Superintendent Barber is under a constitutional and statutory obligation to provide parity of programs for women. The proof at trial indicates he failed to fulfill this important obligation.

An appropriate order, requiring Raymond Barber as Superintendent of Public Instruction for the Commonwealth of Kentucky to submit a plan to correct the constitutional deficiency, accompanies this opinion.