Pauletta **BEEHLER**, et al., Plaintiffs,

v.

Glen **JEFFES**, et al., Defendants.

Civ. No. 83–1024.

United States District Court,
M.D. Pennsylvania,

June 30, 1986.

Thomas M. Place, Carlisle, Pa., Deborah Harris, Susan Cary Nicholas, Kathryn Kolbert, Philadelphia, Pa., (Thomas Harvey, American Civil Liberties, Union/Foundation of Pa., Stephen F. Gold, PILCOP, Philadelphia, Pa., of counsel), Stefan Presser, Legal Director, ACLU of Pennsylvania, Ann E. Behravesh, Women's Law Project, Philadelphia, Pa., for plaintiffs.

Gregory R. Neuhauser, Office of Atty. Gen. Crim. Justice Agencies, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Before the court is a Report of Magistrate Raymond J. Durkin dated January 9, 1986, recommending that defendants' Mo-

tion for Summary Judgment be granted with respect to the preclusive effect of *I.C.U. v. Shapp*, Nos. 70–2545, 70–3054, 71–0513, 71–1006 (E.D.Pa.) (I.C.U.), except issues relating to gender discrimination. In addition, the Magistrate recommends that defendants' Amended Motion for Summary Judgment be denied. Defendants objected to two (2) portions of the Magistrate's Report and filed a brief in support on January 22, 1986. Specifically, defendants contend that the Magistrate erred in recommending the denial of the Amended Motion for Summary Judgment pertaining to plaintiffs' claims for damages based upon Title IX of the Education Amendments of 1972, Title II of the Vocational Education Amendments of 1976 and violations of Pennsylvania law. Plaintiffs filed a Brief in Opposition to Defendants' Objections to Portions of the Magistrate's Report and their own Objections to Portions of the Magistrate's Report and supporting brief on February 18, 1986, pursuant to a Motion for Extension of Time.[1] Following their own request for an extension of time, defendants filed a Brief in Opposition to Plaintiffs' Objections and a Motion to Join an Additional Party on March 28, 1986.[2] These matters are ripe for disposition. For the reasons set forth below, plaintiffs' objections will be sustained in part in that the court finds that the issues of physical safety hazards, a lack of privacy, gender discrimination and reliance on unreliable urine tests are not precluded by the *I.C.U.* litigation. Plaintiffs' remaining objections concerning other issues which the Magistrate found precluded will be denied. Defendants' objections to the Magistrate's recommendation involving plaintiffs' federal statutory claims will be denied, but defendants' objections concerning plaintiffs' state law claims will be sustained.

## FACTUAL BACKGROUND

A brief summary of the factual background of *I.C.U.* and this case is necessary before proceeding with an analysis of the present matter. Plaintiffs in the *I.C.U.* litigation commenced suit alleging that they were subjected to grievous bodily harm, cruel and unusual punishment and violations of their rights under the First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution. *See* Document 77 of the Record—Exhibit A at 5. More specifically, the *I.C.U.* plaintiffs complained of: defendants' failure to provide plaintiffs with many items necessary for maintaining personal hygiene; plaintiffs' illegal and unconstitutional placement in segregation; the arbitrary transfer of prisoners, including demotional transfers resulting in the loss of privileges; censorship of plaintiffs' outgoing and incoming mail; arbitrary restrictions on the reading material available to plaintiffs; a lack of adequate law libraries; a failure to supply a proper diet and provide certain religiously necessitated foods; the lack of adequate medical care; the inadequacy of prison clothing and generally attacked the overall conditions of their confinement.[3] *Id.* at 6–17. A Consent Decree was entered in *I.C.U.* concerning most issues, while a few remaining issues were disposed of at trial.[4]

The Consent Decree in *I.C.U.* comprises seventeen (17) pages, with an additional

1. Plaintiffs filed a Motion to Extend Close of Discovery Proceedings on January 14, 1986 and defendants filed a Motion for Enlargement of Time to Respond to Plaintiffs' Requests for Admissions on May 2, 1986. Both motions will be referred to the Magistrate for consideration. Although untimely, the court will consider plaintiffs' objections to the Magistrate's Report. *See* Local Rule 904.2; *Grandison v. Moore*, 786 F.2d 146 (3d Cir.1986).

2. Defendants filed a brief in support of this motion on April 6, 1986. On April 18, 1986, defendants, with the apparent concurrence of all parties, requested that the court hold defendants' motion to join in abeyance. *See* Document 86 of the Record. Accordingly, this matter also will be referred to the Magistrate for consideration.

3. The use of strip searches, cell searches, limitation on visitors and adequacy of prison personnel were among the conditions plaintiffs complained of. All of the aforementioned conditions and practices were averred as resulting in violations of the plaintiffs' constitutional rights. In fact, plaintiffs' prayer for relief, consisting of some twelve (12) pages, set forth in detail precisely what plaintiffs requested the court to order.

4. The issues of maximum security conditions and conjugal rights were litigated.

seventeen (17) pages of appendices. Approximately twenty (20) separate areas raised by the complaints in *I.C.U.* are addressed by the Consent Decree. *See* Document 77 of the Record—Exhibit B; Document 82 of the Record at 5. In addition, subsequent court orders specifically address other issues including, *inter alia,* the adequacy of law libraries, *see* Document 77 of the Record—Exhibit C, and inappropriate medical care. *See* Document 77 of the Record—Exhibits H and I.

The complaint in this case was filed on behalf of all female prisoners who are or will be confined at the State Correctional Institution at Muncy. As discussed further in this Memorandum, the class in *I.C.U.* encompasses the present plaintiffs. *See infra* at 935 n. 6. Plaintiffs challenge a "... wide spectrum of programs, practices, services and facilities at Muncy ..." and "... challenge conditions of confinement at Muncy which subject them to serious health and safety hazards." Document 1 of the Record at 2. Plaintiffs' claims are based on sex discrimination, *id.* at 8–21, unsafe conditions of confinement, *id.* at 21–22, violations of their due process rights, *id.* at 22–23 and interference with their religious freedom. *Id.* at 23. The condition of confinement complaints concern the existence of a fire hazard, exposure to asbestos, inadequate medical care, lack of exercise and limited visitation. The due process claims center around the alleged lack of access to an adequate law library and reliance on unreliable urine tests subjecting plaintiffs to misconduct charges. With this brief factual background in mind, the court focuses on the Magistrate's Report and Recommendations and the parties' objections to the same.

## DISCUSSION

### I.

The court first considers plaintiffs' objections to the Report and Recommendation of the Magistrate. Specifically, plaintiffs object to that portion of the Magistrate's Report recommending that defendants' Motion for Summary Judgment be granted with respect to the preclusive effect of *I.C.U.,* excluding those issues involving gender discrimination. Document 75 of the Record at 2. The Magistrate provides a detailed analysis of this issue in his Report and Recommendation. *See* Document 68 of the Record at 4–21.

At the outset, the court recognizes that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed therein. *See Fox v. Consolidated Rail Corp.,* 739 F.2d 929 (3d Cir.1984), *cert. denied,* 469 U.S. 1190, 105 S.Ct. 962, 83 L.Ed.2d 968 (1985). The authority of a court to enforce settlement decrees has as its foundation a policy favoring amicable adjustment of disputes and avoidance of costly and time consuming litigation. *See Rosso v. Foodsales, Inc.,* 500 F.Supp. 274 (E.D.Pa.1980). Accordingly, as the Magistrate finds, the *I.C.U.* court retains jurisdiction to determine if there are violations of the consent decree and, if necessary, to modify that decree to the extent changing circumstances warrant. It would be a waste of judicial resources for this court to litigate matters over which the *I.C.U.* court has retained jurisdiction by virtue of the consent decree entered into in that case.

The defense of *res judicata* [5] requires that the party asserting the defense bear the burden of demonstrating that it applies. *See United States v. Athlone Industries, Inc.,* 746 F.2d 977 (3d Cir.1984). The Magistrate found that plaintiffs were precluded from asserting their § 1983 and federal constitutional claims, with the exception of plaintiffs' gender discrimination claims, in this case. The court agrees that applica-

---

**5.** The doctrine of *res judicata* is often analyzed to include "issue preclusion" and "claim preclusion." *United States v. Athlone Industries, Inc., infra,* at 983 n. 4. Claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of the same causes of action. *Id.* Issue preclusion refers to the effect of a judg-

ment in foreclosing relitigation of an issue that has been litigated and decided. *Id.* Thus, claim preclusion extends to all relevant issues whether or not raised in the first action. Issue preclusion requires that the issue has been raised and necessarily decided.

tion of the claim preclusive aspect of the *res judicata* doctrine bars plaintiffs from asserting the majority of their § 1983 and federal constitutional claims in this action.

■ Claim preclusion requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action. *Id.* at 983. Plaintiffs object to the Magistrate's recommendation primarily because they contend that there was no prior judgment on the merits in *I.C.U.* and this suit is not based on the same causes of action as those asserted in *I.C.U.*[6]

■ A consent decree generally is treated as a final judgment on the merits and is accorded *res judicata* effect except when there has been an express reservation of rights. *United States v. Athlone Industries, Inc., supra,* at 983 n. 5. Accordingly, the issue is whether the consent decree in *I.C.U.* contained an express reservation of rights clause which precludes that decree from being treated as a final judgment on the merits.

In pertinent part, the consent decree provides that "plaintiffs reserve their rights to sue for alleged violations of state or federal law." Plaintiffs maintain that by reason of this reservation clause, plaintiffs are not precluded from litigating claims that overlap with claims raised in *I.C.U.* Defendants asserted, and the Magistrate agreed, that the reservation clause in this case means that "... individual plaintiffs could bring individual suits if they felt their rights were being violated on an individual basis when otherwise proper policies or practices were not being followed." Document 68 of the Record at 12.

The scope of a consent decree must be discerned within its four (4) corners. *See Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). The goal of the task of interpreting a contract is to ascertain the intent of the parties as manifested by the language of the written instrument. *AC and S, Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968 (3d Cir.1985). Consequently, a court may examine the circumstances surrounding the consent decree, including the context in which the parties were operating, without departing from the so-called four (4) corners rule. *New York State Association for Retarded Children, Inc. v. Carey,* 596 F.2d 27, 37 (2d Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979). *Accord Barber v. International Brotherhood of Boilermakers,* 778 F.2d 750 (11th Cir.1985); *Alliance to*

---

**6.** The *I.C.U.* litigation was brought on behalf of a class of Pennsylvania prisoners comprising "all persons who are now *or will be* incarcerated in the Pennsylvania State Correctional Institutions at Graterford, Dallas, Huntingdon, Muncy, Rockview and Pittsburgh." Report of Magistrate, Document 68 of the Record at 4 (emphasis added). As the Magistrate notes, the class in *I.C.U.* is broad and open ended encompassing the class in the instant case. *Id.* at 7. Plaintiffs, in their objections, do claim that the class in this case was not adequately represented in *I.C.U.* The court does not accept plaintiffs' broad assertion that the class was not adequately represented in *I.C.U.* In so doing, the court finds that the class representatives adequately protected the interests of that class. *See Moldovan v. The Great Atlantic & Pacific Tea Co.,* 790 F.2d 894 (3d Cir.1986) (identity of interests determines due process question). Plaintiffs' primary contention is that plaintiffs' attorneys in *I.C.U.* did not investigate certain conditions or employ experts to inspect Muncy for various "hazards." Document 76 of the Record at 30–31. Apparently, plaintiffs contend that utilization of expert witnesses was critical to the ade-

quate representation of plaintiffs in the *I.C.U.* litigation. The fact remains that plaintiffs in *I.C.U.* vigorously pursued their causes of action, culminating in the trial of two (2) issues and an extensive consent decree concerning the remaining issues. Even considering the affidavits submitted by plaintiffs, *but see* Document 82 of the Record at 3–4 n. 2, the court believes that counsel in *I.C.U.* thoroughly and effectively represented the interests of those plaintiffs. Defendants recognized, and the court in *I.C.U.* stated, that the *I.C.U.* litigation resulted in "full protection" for the inmates' constitutional rights, in some instances going beyond constitutional mandates. Finally, the court rejects plaintiffs' assertion that the "factual issue" of adequate representation precludes a granting of summary judgment. Summary judgment is appropriate when *material facts* are not in dispute. The material facts in this case demonstrate that plaintiffs' interests were adequately protected in the *I.C.U.* litigation insofar as the *I.C.U.* litigation concerned the same causes of action as those asserted here. Accordingly, due process does not preclude the decree in *I.C.U.* from being accorded preclusive effect.

*End Repression v. City of Chicago,* 742 F.2d 1007 (7th Cir.1984). *See also National Wildlife Federation v. Gorsuch,* 744 F.2d 963, 971 (3d Cir.1984). Considering the four (4) corners of the decree, the court agrees with the Magistrate's conclusion that the reservation clause does not negate the finality of the consent decree for *res judicata* purposes in this case. *See* Document 68 of the Record at 12–13.

The consent decree itself manifests the parties' intention to litigate in the *I.C.U.* court those issues involving an institution or system wide pattern of a failure or refusal to follow the provisions of the decree. The possibility of changed circumstances or a change in the law is expressly provided for in the terms of the consent decree granting the *I.C.U.* court the ability to modify its terms. *See Safe Flight Instrument Corp. v. United Control Corp.,* 576 F.2d 1340 (9th Cir.1978). This prospective power to modify does not, however, alter the finality of the consent decree's terms. On the other hand, this prospective nature of the consent decree evidences the parties' intent that challenges to institution and system wide policies be made in the *I.C.U.* court. The Magistrate's interpretation of the reservation clause comports with the text of and the purpose behind the entire consent decree.

▄ In sum, the court finds that the reservation of rights clause, read within the parameters of the entire consent decree, does not negate the conclusive effect of that decree for *res judicata* purposes. Moreover, the very terms of the consent decree provide plaintiffs with sufficient enforceable relief in the *I.C.U.* court. *See e.g., Link v. Mercedes-Benz of North America, Inc.,* 618 F.Supp. 679, 696 (E.D. Pa.1985). Accordingly, the consent decree constitutes a final judgment on the merits barring subsequent suits based on the same causes of action involving institution or state wide deviation from, or modifica-

tion of, policies or procedures covered by the decree. The ability to complain of isolated departures from these policies or procedures is preserved by the reservation of rights clause.

Finally, the court must find that the instant action is based on the same causes of action as those asserted in *I.C.U.*[7] What constitutes the same causes of action depends on the facts in each case and no simple test can be utilized. *United States v. Athlone Industries, Inc., supra,* at 983. "Rather than resting on the specific legal theory invoked, *res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims, although a clear definition of that requisite similarity has proven elusive." *Davis v. United States Steel Supply,* 688 F.2d 166, 171 (3d Cir.1982), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). Our Court of Appeals, however, has "indicated a predisposition towards taking a broad view of what constitutes identity of causes of action—'an essential similarity of the underlying events giving rise to the various legal claims.'" *United States v. Athlone Industries, Inc., supra,* at 984. Focusing on the central purpose of the doctrine of *res judicata,* the court stated, "[w]e are thus in keeping with '[t]he present trend ... in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'" *Id.* (citation omitted); *see also Melikian v. Corradetti,* 791 F.2d 274 (3d Cir.1986) (diversity action applying New Jersey's "entire controversy doctrine;" doctrine reaches more broadly than same cause of action requirement of *res judicata*). In light of this analysis, our Court of Appeals enunciated several factors to determine when suits involve the same causes of action.

▄ Thus, this court must consider: (1) whether the acts complained of and the

---

7. Again, the court recognizes that claims involving gender discrimination were found not to be precluded by the consent decree in *I.C.U.* Defendants did not object to this portion of the Magistrate's Report and the court agrees with the Magistrate's recommendation concerning this issue. *See* Document 68 of the Record at 18–20. Similarly, the privacy issue was not presented to the *I.C.U.* court. The privacy issue is interrelated with the gender discrimination issue, neither of which is similar to claims made in *I.C.U.*

demand for relief are the same; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same. *Id.* The Magistrate noted that plaintiffs pointed to no cause of action, other than their claims of sex discrimination and privacy, which was different from that asserted in *I.C.U.* Plaintiffs attempt to cure this deficiency by setting forth what they perceive to be "different" causes of action in their Memorandum in Support of Objections submitted after the Magistrate's Report was filed.[8]

Taking a broad view of what constitutes identity of causes of action and mindful of the purpose of claim preclusion, the court finds that the causes of action in *I.C.U.* and this case are the same *except* for claims involving gender discrimination, privacy, physical safety hazards and the use of allegedly unreliable urine tests. The court believes that these four (4) claims concern different acts and demand relief not requested in *I.C.U.* Moreover, different evidence will need to be produced in order to establish these claims.

■ In *United States v. Athlone Industries, Inc., supra,* the court found that a subsequent suit involved different acts, different wrongs and necessitated different evidence to support the different material facts alleged. *Id.* at 986. Defendants do not contend that the issues of dangerous fire equipment and evacuation procedures, exposure to cancer causing asbestos, or unsafe plumbing causing contamination of the water supply were presented in *I.C.U.*

Certainly, these issues complain of different wrongs and would result in different relief. The witnesses needed to establish the essential facts to support these claims were not involved in *I.C.U.*

Plaintiffs' claims of unreliable urine tests being utilized to detect the use of controlled substances warrant the same result. In fact, the use of such testing apparently postdates the decree in *I.C.U.* Furthermore, it is unlikely that the *I.C.U.* court would seek to modify its consent decree to encompass these new areas. Defendants' argument that plaintiffs could have raised these claims in *I.C.U.* so that they are precluded from doing so here is without merit. The test of claim preclusion is whether or not the present claims are based on the same causes of action. *See supra* at 934–35 and 986. The fact that claims may have been raised in a previous action is of no moment if those claims concern different causes of action.[9]

■ On the other hand, the court finds that plaintiffs' claims of inadequate medical treatment and lack of legal programs are the same causes of action as those presented in *I.C.U.* The *I.C.U.* consent decree was, in part, in response to claims of inadequacy of health care and inadequate access to the courts. Plaintiffs point to no difference in these claims which render them separate causes of action from those asserted in *I.C.U.* In fact, plaintiffs concede that plaintiffs' claims concerning the adequacy of law libraries "were resolved by a court approved stipulation specifying the required contents of institutional law libraries." Document 76 of the Record at 22. While plaintiffs argue new theories, *i.e.,* cumulative effects of unreasonably

---

8. Unfortunately, plaintiffs did not set forth the "different" causes of action as clearly in their Memorandum In Opposition to Defendants' Motion for Summary Judgment. *See* Document 28 of the Record. In that document, plaintiffs primarily distinguished their sex discrimination and privacy claims from those asserted in *I.C.U.* Accordingly, the Magistrate was denied the benefit of plaintiffs' analysis.

9. Of course, a party may not fragment similar causes of action and litigate them piecemeal in several suits. *See* Magistrate's Report, Document 68 of the Record at 13–14. Parties may not recontest matters which they have had a full and fair opportunity to litigate. *See Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). These principles, however, bar claims based on the same causes of action. Thus, the "essential similarity" test already discussed governs the determination of whether a party is precluded from litigating a matter that could have been raised in a previous suit in a subsequent action.

limited access to legal collection and lack of access to legal assistance, the underlying events giving rise to these theories are essentially similar to those events precipitating the *I.C.U.* consent decree; namely, the existence and adequacy of a law library which gives inmates meaningful access to court. Accordingly, the theory of recovery is basically the same and the requested relief almost identical. In addition, pertinent witnesses and other evidence would be duplicative.

The same reasoning applies to plaintiffs' claims concerning a lack of adequate medical care. As plaintiffs demonstrate, the consent decree in *I.C.U.* dealt with a wide variety of complaints arising out of alleged improper medical treatment or procedures. *See* Document 76 of the Record at 18–19. Plaintiffs' attempts to distinguish the cause of action in this case from that asserted in *I.C.U.* fails. Plaintiffs aver that "this cause of action is based not on the broad issues of health care systems and procedures addressed throughout all prisons in *I.C.U.*, but rather on specific incidents occurring both before and since the filing of this action." Document 76 of the Record at 19. Certainly, individual claims may be pursued, in accordance with the reservation of rights clause contained in the *I.C.U.* consent decree, in separate actions. Surely, plaintiffs cannot expect to try each of these individual actions in this class action. As conceded, broad based claims concerning a lack of adequate medical care, constitute the same causes of action as those asserted in *I.C.U.* The relief requested essentially is the same. To the extent plaintiffs' claim that "changed circumstances" render claim preclusion inapplicable, the court recognizes that the *I.C.U.* court's retention of jurisdiction provides an ample forum to handle evolving conditions.

In conclusion, the court finds that the doctrine of claim preclusion bars relitigation of the same causes of action in this case that were the subject of the *I.C.U.* consent decree.[10] Of the five (5) causes of action plaintiffs assert to be different from those in *I.C.U.*, *see* Document 76 of the Record at 15–23, the court finds three (3) of these not to be precluded. Namely, those causes of action alleging physical safety hazards, a lack of privacy and reliance on unreliable urine tests.[11] The claims averring inadequate medical treatment and inadequate legal facilities are essentially similar to claims asserted in and resolved by the consent decree in *I.C.U.* Therefore, plaintiffs' claims involving privacy, gender discrimination, physical safety hazards and unreliable urine tests will not be dismissed.

## II.

The Magistrate recommends that defendants' Amended Motion for Summary Judgment be denied. Defendants object to this recommendation, raising two (2) issues. First, defendants claim that the Magistrate erred in denying their Motion for Summary Judgment insofar as it relates to plaintiffs' claims pursuant to Title IX of the Education Amendments of 1972 (Title IX) and Title II of the Vocational Education Amendments of 1976 (Title II). In essence,

---

**10.** The court recognizes that a consent decree also can bar relitigation of issues through the doctrine of issue preclusion. For issue preclusion to apply, the fact in issue must be (1) identical to an issue in the former action, (2) actually litigated and determined by the parties, and (3) necessarily so determined. *Barber v. International Brotherhood of Boilermakers*, 778 F.2d 750, 757 (11th Cir.1985). A consent decree may have preclusive effect if the parties' intent to make it so is manifested in the decree. *Id.* In this case, the court already has held that the *I.C.U.* consent decree is "final" in that the reservation of rights clause does not manifest an intent that plaintiffs may commence separate actions concerning the same issues. Consequently, those issues actually resolved by the *I.C.U.* decree may not be relitigated in this action. *See Purter v. Heckler*, 771 F.2d 682, 690 n. 5 (3d Cir.1985). Certainly, those matters resolved in *I.C.U.* were necessarily made a part of the consent decree. Moreover, some courts define "issue" as any legal theory or factual assertion related to the subject matter and relevant to the issues actually adjudicated in the former action. *Id.* Accordingly, plaintiffs are precluded from asserting issues in this case which were resolved in the *I.C.U.* consent decree. *See Melikian v. Corradetti*, 791 F.2d 274 (3d Cir.1986).

**11.** Defendants apparently concede that the gender discrimination claim is not precluded.

defendants maintain that neither Title IX or Title II provide for a private cause of action for damages.

In *Lieberman v. University of Chicago,* 660 F.2d 1185 (7th Cir.1981), *cert. denied,* 456 U.S. 937, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982), the court concluded that Title IX did not impliedly provide a damage remedy to individuals allegedly made the victim of sexual discrimination. Relying on the legislative history, the court stated, "... we consider it unwise to imply an additional remedy. If a damages remedy is to be created, it should be fashioned by Congress and not by the Courts, thus providing the institutions with ample notice and an opportunity to reconsider their acceptance of federal aid." *Id.* at 1188. In so doing, the court recognized the apparent conflict between theories of statutory construction [12] and the Supreme Court's holding in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).[13] This reasoning was reiterated by the court in *Cannon v. University of Health Sciences/The Chicago Medical School,* 710 F.2d 351 (7th Cir.1983). *Accord Pruitt v. Illinois Township High School District 214,* No. 88 C 4346, slip op. (N.D.Ill., January 20, 1984) [Available on WESTLAW, DCT database] (money damages unavailable under Title IX). *See also Burroughs v. Hills,* 564 F.Supp. 1007 (N.D.Ill.1983), *modified on other grounds,* 741 F.2d 1525 (7th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985) (question of whether a private cause of action exists is distinct from what relief is available; greater hesitancy to imply cause of action for damages rather than equitable relief; *citing Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)).

As authority to support their position that damages are available for violations of Title IX, plaintiffs cite *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984). In *Darrone,* the court clarified the scope of a private right of action to enforce § 504 of the Rehabilitation Act of 1973. In so doing, the court recognized that § 504 was virtually identical to § 601 of Title VI. In fact, the remedies set forth in Title VI are specifically made available for violations of the Rehabilitation Act. *Id.* at 626, 104 S.Ct. at 1250.

While the Supreme Court did not determine the extent to which money damages are available under § 504, it did state, "we think it clear that § 504 authorizes a plaintiff who alleges intentional discrimination to bring an equitable action for backpay." *Id.* at 630, 104 S.Ct. at 1252. In making this finding, the court held that, "in *Guardians Assn. v. Civil Service Comm'n of New York City,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), a majority of the Court expressed the view that a private

---

**12.** On one side there exists a principle that when a statute expressly provides a particular remedy, it is improper to imply the existence of other remedies. *Lieberman v. University of Chicago, supra,* at 1187 n. 4 *citing Transamerica Mortgage Advisors Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *see Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). This principle is countered by the general statement that the existence of a statutory right implies the existence of all necessary and appropriate remedies. *Lieberman v. University of Chicago, supra,* at 1187 n. 4 (citation omitted). *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

**13.** In *Cannon v. University of Chicago, supra,* the Supreme Court held that Title IX contains an implied private right of action for an individual injured by reason of a violation of that statutory section. The availability of a damage remedy was not analyzed although the court referred to an injured party's common law entitlement to damages. *Id.* 441 U.S. at 689 n. 10, 99 S.Ct. at 1953-54 n. 10. Moreover, in *Cannon,* the Supreme Court indicated that Congress intended to create remedies in Title IX comparable to those available under Title VI. As discussed *infra,* in *Guardians Ass'n v. Civil Service Commission,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), a majority of the court found that compensatory relief based on past violations of conditions attached to the use of federal funds is available for Title VI violations involving intentional discrimination. *Id.* at 602-03, 103 S.Ct. at 3232-33. Thus, the numerous opinions in *Guardians* indicate that compensatory damages are available for intentional violations of Title VI. In light of the comparability of remedies between Title VI and Title IX, *see Cannon v. University of Chicago, supra,* the court finds support for its finding that compensatory relief is available under Title IX.

plaintiff under Title VI could recover backpay; and no member of the Court contended that backpay was unavailable, at least as a remedy for intentional discrimination." *Id.* Accordingly, the Supreme Court recognizes that backpay is an appropriate remedy for intentional violations of Title VI.[14] Therefore, it would appear that money damages are available for intentional violations of Title IX since, as discussed, Congress intended to create remedies in Title IX comparable to those available under Title VI. *See Cannon v. University of Chicago, supra,* at 939 n. 13. *See also N.A. A.C.P. v. Medical Center, Inc.,* 599 F.2d 1247 (3d Cir.1979) (Title IX was expressly intended by Congress to track the previously enacted Title VI).

■ In the present case, plaintiffs apparently allege that defendants intentionally discriminated against plaintiffs. Such allegations are sufficient for purposes of the present motion [15] to support a damage claim. *See Storey v. Board of Regents,* 604 F.Supp. 1200 (W.D.Wis.1985) (in *Guardians,* court made clear that equitable relief was available under Title VI and by implication Title IX; court further suggested that award of money damages may be appropriate in private suit involving intentional discrimination).

As to the availability of damages under Title II, neither party sets forth their position in any detail. Defendants aver only that "Title II of the Vocational Education Amendments of 1976, 20 U.S.C. §§ 2301 *et. seq.,* should not form the basis for a damage remedy against state officials." Document 35 of the Record at 8. In support, defendants aver that Title II contains no such remedy and that the alternate remedies contained in Title IX are available for violations of Title II. *Id.* No authority holding that damages are not available under Title II is cited. *See* Document 36 of the Record at 4.

■ The court finds, for reasons already discussed, that Title II of the Vocational Educational Amendments may warrant an award of damages especially if intentional discrimination is involved.

14. In fact, in *Darrone* the court said, "It is unnecessary to review here the grounds for this interpretation of Title VI." This interpretation of *Guardians* was delivered by a unanimous Supreme Court in *Darrone. See also Sabo v. O'Bannon,* 586 F.Supp. 1132 (E.D.Pa.1984) (in *Guardians,* a majority of the court did reach a consensus that compensatory damages are unavailable under Title VI *absent a showing of intentional discrimination by the defendants* ). At least one court in the Seventh Circuit recognized that *Guardians* may undermine the rationale in *Lieberman. See Organization of Minority Vendors, Inc. v. Illinois Central Gulf Railroad, et al.,* 579 F.Supp. 574 (N.D.Ill.1983). In that case the court stated:

From the various opinions in Guardians Association it is clear that at least four members of the Court believe that private plaintiffs should be able to recover damages for all violations of Title VI and accompanying regulations, while at least two other justices believe that damages should be awarded only upon a showing of an intentional violation. Thus, all six members of the Court who have addressed the issue believe that plaintiffs can recover damages for intentional violations of Title VI.

This court is aware of pre-Guardians Association precedent in this circuit suggesting that plaintiffs here have no cause of action for damages, even upon proof of an intentional violation. In *Lieberman v. University of Chi-*

*cago,* 660 F.2d 1185 (7th Cir.1981), *cert. denied,* 456 U.S. 937, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982), the court held plaintiff had no right to monetary relief for a violation of the sex discrimination provision of Title IX. Justice White cited Lieberman in his Guardians Association opinion for the general proposition that damages were inappropriate in Title VI actions. 103 S.Ct. at 3232, n. 23. As noted above, however, he then narrowed the application of this no-damages principle to cases where the discrimination was unintentional. We need not decide at this point whether Guardians Association supersedes Lieberman in cases where there has been an intentional violation of non-discrimination provisions. *Id.* at 595 n. 10. As mentioned, the more recent decision in *Darrone* reenforces the court's view that damages are available for intentional violations of Title VI. *But see Bagley v. Hoopes,* —— F.Supp. ——, No. 81–1126–Z, slip op. (D.Mass., August 6, 1985) (only remedies available to a private litigant under Title IX are injunctive relief and attorney fees, not compensatory damages).

15. As the Magistrate notes, the present motion aimed at these claims is functionally equivalent to a motion to dismiss for failure to state a claim. *See* Document 68 of the Record at 21 n. 2. Of course, defendants may raise other objections to these claims, if they deem it necessary, by appropriate motion.

While not addressing the issue of the availability of damages, the court in *Canterino v. Wilson*, 546 F.Supp. 174 (W.D.Ky.1982), discussed applicable standards concerning the anti-discrimination provisions of Title IX and the federally funded Vocational Education Act. *See Canterino v. Barber*, 564 F.Supp. 711 (W.D.Ky.1983). The apparent interrelationship between these provisions convinces the court that there is no reason why damages would not be available for discriminatory practices under Title II.

The Magistrate found that defendants did not demonstrate that a § 1983 action for damages for violations of Titles IX and II is unavailable. Document 68 of the Record at 29. Section 1983 provides a damages remedy for deprivations under color of state law of rights secured by federal statutes and regulations. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). It has already been established that a private right of action exists under Title IX and Title II. Thus, the statutes in question create rights within the meaning of § 1983. *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n, supra.* For these same reasons it can be argued that Congress has not foreclosed private enforcement of the statutes in the enactments themselves. *Id.* Defendants only argument is that the "devices provided by Congress, while excluding an action for damages, are 'sufficiently comprehensive.'" Document 72 of the Record at 7.[16]

In *Guardians Ass'n v. Civil Service Commission, supra,* the court, distinguishing the views of Justice Stevens, stated:

[d]amages indeed are usually available in a § 1983 action, but such is not the case when the plaintiff alleges only a deprivation of rights secured by a Spending Clause statute. Thus, in *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 27–29 [101 S.Ct. 1531, 1545–1546, 67 L.Ed.2d 694] (1981), the Court indicated that, even if the plaintiffs were entitled to relief under § 1983 for defendants' alleged violations of certain Spending Clause legislation, the defendants would not be required 'to provide money to [the] plaintiffs.'

*Id.* 463 U.S. at 602 n. 23, 103 S.Ct. at 3232–33 n. 23. Thus, in light of this reasoning, it appears that § 1983 does not provide a separate vehicle by which plaintiffs can recover damages for violations of Title IX or Title II. In any event, the court's finding that damages are available for at least intentional violations of these statutory sections renders extended discussion of the § 1983 issue unnecessary.

### III.

Finally, defendants object to the Magistrate's recommendation that their Motion for Summary Judgment be denied as it relates to plaintiffs' claims based on state law. Initially, in the wake of apparent misunderstandings as to the claims contested in this portion of defendants' motion, the court emphasizes that defendants seek dismissal based on this court's lack of jurisdiction over plaintiffs' *state-law claims* only.[17] Plaintiffs maintain that the court has jurisdiction over their state law claims insofar as they seek damages from individual defendants.[18] The Magistrate agreed,

---

**16.** The court recognizes that the Magistrate did not have the benefit of this contention when issuing his Report and Recommendation. Defendants' first attempt to demonstrate that a § 1983 action based on violations of these statutes is unavailable occurred in their Objections to the Magistrate's Report.

**17.** The Magistrate's Report recognizes that "to the extent that plaintiffs may be alleging that the defendants acted under state law in a manner violative of the federal Constitution, an action against them for damages in their individual capacity would lie." Document 68 of the Record at 24.

**18.** In their complaint, plaintiffs assert claims against defendants in their individual and official capacities and also seek compensatory damages. The state law claims are based on the Pennsylvania Constitution, *i.e.,* Equal Rights Amendment, and Pennsylvania statutory law. In essence, these claims are based on the alleged disparity between educational and vocational opportunities provided for male as opposed to female prisoners. Additionally, plaintiffs' claim that defendants' failure to provide equal treatment and comparable conditions of confinement for female prisoners violates various portions of the Pennsylvania Constitution and Pennsylvania statutory law. *See e.g.,* Com-

finding that "a claim for damages for violation of state law against the individual defendants would be permissible." *Id.* at 24–25. *See Ferrari v. Woodside Receiving Hospital,* 624 F.Supp. 899 (N.D.Ohio 1985). The court might agree were this a routine case where a party seeks damages from an individual acting under color of state law. *See Goka v. Bobbitt,* 625 F.Supp. 319 (N.D. Ill.1985); *see also Duckworth v. Franzen,* 780 F.2d 645 (7th Cir.1985), *appeal filed,* 54 U.S.L.W. 3763 (May 20, 1986).

█ Applicability of the Eleventh Amendment "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceedings, as it appears from the entire record." *Wilson v. Beebe,* 770 F.2d 578, 587 (6th Cir.1985) (citations omitted). In theory, the Eleventh Amendment does not bar an action against a state official individually, but when an action names individual defendants in an effort to collect from a state for the authorized acts of its agents, the Eleventh Amendment applies. *Id.* In this case, it appears that a judgment against the individual defendants would have the effect of forcing the Commonwealth of Pennsylvania to expend public funds. *Cf. Demery v. Kupperman,* 735 F.2d 1139 (9th Cir.1984), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985) (Supreme Court's holding in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), that a suit against state officials for retroactive monetary relief must be brought in state court should be limited to suits that are actually suits against the state itself).

As discussed, in *Pennhurst,* the Supreme Court stated, "under *Edelman v. Jordan, supra,* [415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ] a suit against state officials for retroactive monetary relief, whether based on federal or state law, must be brought in state court." *Id.* 465

U.S. at 122, 104 S.Ct. at 919. Some courts attempt to narrow this language, *see Demery v. Kupperman, supra,*[19] by requiring that the suit be against the "state itself." *See Spruytte v. Walters,* 753 F.2d 498 (6th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986) (complaint alleged violation of *federal* constitutional rights). In addition, however, the *Pennhurst* court stated:

A federal court's grant of relief against state officials on the basis of state law, *whether prospective or retroactive,* does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Id.* at 106, 104 S.Ct. at 911 (emphasis added).

█ Aside from whether this language in *Pennhurst* should be limited as discussed, the court finds that an award of damages against the individual defendants in this case would operate, in effect, as a judgment against the state itself. As such, the claims based on state law are barred by the Eleventh Amendment. *See Allegheny County Sanitary Authority v. United States Environmental Protection Agency* (ALCOSAN), 732 F.2d 1167 (3d Cir.1984) (*Pennhurst* held that Eleventh Amendment barrier to suits against the state or its agencies cannot be overcome by suing the officials because theories of *Ex Parte Young,* (citation omitted) and *Edelman v. Jordan,* (citation omitted) are inapplicable in a suit against state officials on the basis of state law). In *ALCOSAN,* there was no basis for a finding that the state officials acted *ultra vires* and our Court of Appeals dismissed state law claims pursuant to the

plaint—Document 1 of the Record at Counts II, III, IV, VI, VIII, X, XI, XII, XIII, XIV, XV, XVI and XVII. For example, plaintiffs aver a lack of equal rehabilitative programs, recreational facilities, visiting privileges, legal programs, religious services and medical treatment.

19. The *Demery* court did not consider what effect *Pennhurst* has on the availability of a federal forum for suits seeking damages for violation of state law from state officials personally. *Id.* at 1150 n. 9.

Eleventh Amendment. Similarly, in the present matter, there is no indication that the individual defendants acted outside their authority in the operation of S.C.I. Muncy. Accordingly, the request for damages against defendants individually does not remove the Eleventh Amendment bar to suit in federal court in this case.[20]

While *ALCOSAN* did not involve a request for money damages, other courts in this circuit have dismissed claims based on state law against individual defendants. In *Bussard v. Neil,* 616 F.Supp. 854 (M.D.Pa. 1985), Judge Caldwell dismissed plaintiff's state law claims based on the holding in *Pennhurst* that the Eleventh Amendment bars suit in federal court against state officials when the relief sought would have a direct impact on the state itself.[21] *Id.* at 856. Similarly, Judge Rambo recently remanded state law claims asserted by plaintiff against various defendants.[22] *See Holloway v. Cohen,* —— F.Supp. ——, No. 85–1338, slip op. (M.D.Pa., April 14, 1986) [Available on WESTLAW, DCT database]. In remanding the state law claims, the court held, "... the eleventh amendment is a bar *to any exercise* of pendent jurisdiction over plaintiff's state law claims against the defendants." *Id.* at 4. This holding relied on the Supreme Court's language in *Pennhurst, see supra* at 942, suggesting that a federal court's grant of retroactive relief against state officials on the basis of state law does not vindicate the supreme authority of federal law.

The aforementioned language in *Pennhurst* suggests that cases in which individ-

ual state officials are sued on the basis of state law may not be brought in federal court. Even if the court were to read the Supreme Court's language narrowly, *see supra* at 942, it finds that a monetary judgment against the defendants individually, premised on violations of state law, would operate against the state itself in this case. Plaintiffs seek redress for institution wide conditions and practices. If the individual defendants violated state law and are assessed damages for adhering to these practices and condoning these conditions, then it follows that these procedures and conditions would need to be altered. As such, the damage award would compel the state to act by changing the overall administration of the prison and perhaps requiring the expenditure of public funds. *See Pennhurst State School & Hospital v. Halderman, supra,* 465 U.S. at 101 n. 11, 104 S.Ct. at 908–09 n. 11. Therefore, plaintiffs' claims based on state law will be dismissed.

## CONCLUSION

The court finds that plaintiffs are precluded from asserting claims involving the same causes of action raised and made part of the consent decree in *I.C.U.* in this case. Those causes of action based on physical safety hazards, a lack of privacy, gender discrimination and reliance on unreliable urine tests are not precluded. Plaintiffs' Title IX and Title II claims for damages are sufficient for purposes of this motion in light of apparent allegations of intentional discrimination. Finally, plaintiffs' claims based on state law will be dismissed.

---

**20.** The "individual" versus "official" liability dichotomy is unclear. As one court recognized:

'sued individually and in their official capacity' is one of those standard boilerplate clauses that frequently find their way into pleadings against public officials. The purpose of such an averment appears to be the reservation of alternate sources of recovery for the alleged misconduct—the individual's personal resources, and the treasury of the governmental body which he serves.

*Kedra v. City of Philadelphia,* 454 F.Supp. 652, 664 (E.D.Pa.1978). While the distinction between official and individual liability has not been analyzed in detail:

it appears ... that if the official is found liable for acts done within the scope of au-

thority vested in him by his employer, he is liable in his 'official capacity' ... whereas, if the official has acted outside of his authority, he was not acting 'officially' and therefore only can be held personally liable for his conduct.

*Id.*

**21.** Defendants in *Bussard* were sued in their individual and official capacities and plaintiffs requested injunctive, compensatory and punitive relief.

**22.** As in *Bussard,* plaintiff in *Holloway* alleged, *inter alia,* individual liability and the relief requested included damages from defendants individually.

This case already has consumed a great deal of time for both the litigants and the court. It appears that the remaining issues can be clarified with a view towards precipitating a more expedited conclusion of this matter. Perhaps it would best serve all the parties to meet and make a good faith effort to resolve or crystalize the remaining issues. Any unresolvable issues could then be presented in a more precise manner to avoid further delay.

An appropriate Order will enter.

## ORDER

In accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) Defendants' Motion for Summary Judgment is granted with respect to the preclusive effect of *I.C.U. v. Shapp, except* those claims alleging physical safety hazards, a lack of privacy, gender discrimination and reliance on unreliable urine tests are not precluded.

(2) Defendants' Amended Motion for Summary Judgment is denied insofar as it relates to plaintiffs' claims based on Title IX of the Education Amendments of 1972 and Title II of the Vocational Education Amendments of 1976.

(3) Defendants' Amended Motion for Summary Judgment is granted insofar as it relates to plaintiffs' claims based on state law.

(4) Plaintiffs' claims based on state law are dismissed.

(5) The case is remanded to the Magistrate for further consideration consistent with this Memorandum and Order.