772 F.2d 35
 23 ERC 1583
 JERSEY CENTRAL POWER & LIGHT COMPANY
v.
The STATE OF NEW JERSEY and Irwin I. Kimmelman, Attorney
General of the State of New Jersey.
Appeal of STATE OF NEW JERSEY and Irwin I. Kimmelman.
 No. 84-5883.
 United States Court of Appeals,
Third Circuit.
 Argued April 30, 1985.
Decided Sept. 6, 1985.
As Amended Sept. 23, 1985.
 
 Irwin I. Kimmelman, Atty. Gen. of N.J., James J. Ciancia, Asst. Atty. Gen., Lawrence E. Stanley, Deputy Atty. Gen. (argued), Trenton, N.J., for appellants.
 Martin S. Siegel (argued), Edward K. Dehope, Susan K. Fischer, Riker, Danzig, Scherer & Hyland, Morristown, N.J., for appellees; Bishop, Liberman & Cook, New York City, of counsel.
 Before GIBBONS and HIGGINBOTHAM, Circuit Judges, and NEWCOMER, District Judge*.OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge:
 
 
 1
 It is axiomatic in our federal jurisprudence that a case must present a live controversy throughout the entire course of the litigation. This principle, predicated upon Article III of our Constitution, as well as upon prudential concerns, assures that throughout all stages of the litigation, a case retains both a concrete adversariness between the parties and remediability by the court.
 
 
 2
 As in the related cases of New Jersey Turnpike Authority v. Jersey Central Power & Light and General Public Utilities Nuclear, 772 F.2d 25 (3rd Cir., 1985) and Jersey Central Power & Light v. Township of Lacey, 772 F.2d 1103 (3rd Cir., 1985) the principal issue to be resolved on this appeal is whether, by reason of changed circumstances after the case arose, this controversy is no longer justiciable and we are thereby divested of our constitutional jurisdiction under Article III, because of mootness.
 
 
 3
 The State of New Jersey has taken this appeal from the district court's December 27, 1984 grant of final declaratory and injunctive relief precluding the State from interfering with a public utility's succession of shipments of radioactive nuclear waste from New York into New Jersey.
 
 
 4
 The public utility instituted this action to declare certain provisions of the New Jersey Radiation Protection Act, N.J.S.A. 26:2D-18, et seq., invalid and unenforceable as violative of the Supremacy and Commerce Clauses of the United States Constitution. Additionally, the public utility sought to preliminarily and permanently enjoin enforcement of the state statute and any other state action which interfered with, restricted, delayed or prevented it from transporting the spent nuclear fuel through New Jersey. The public utility also requested damages, costs of suit, reasonable attorney's fees and other relief.
 
 
 5
 The district court narrowed the substantive issue to the statutory question of whether the State properly designated a route for the shipment of these hazardous materials in accordance with the provisions of the Hazardous Materials Transportation Act, 49 U.S.C. Secs. 1801-1812 (1982).
 
 
 6
 The State seeks our review of the district court's invalidation of its designation of a shipment route alternate to that approved by the Nuclear Regulatory Commission on the ground that it was inconsistent with the regulations promulgated under the Hazardous Materials Transportation Act.
 
 
 7
 However, pending our disposition of this appeal, the six-month shipping campaign traversed the route approved by the Nuclear Regulatory Commission, as directed by the district court, and has since concluded, thereby rendering our review of the public utility's injunctive claim meaningless since the State action sought to be enjoined has irretrievably occurred. We reached a similar conclusion regarding the injunctive relief sought in the case of New Jersey Turnpike Authority v. Jersey Central Power & Light, et. al. But unlike that case we must here also consider whether the public utility's additional prayers for declaratory relief, damages and attorney's fees are sufficient to avoid mootness of the case as a whole, despite the mooting of the injunctive relief claim.
 
 
 8
 After having reviewed the record with care, we are inclined to hold that the public utility's claims for damages and attorney's fees were held in abeyance by the district court pending our resolution of the claims for injunctive and declaratory relief. Because only the claims for the injunctive and declaratory relief are before us on this appeal and, because the complaining party, the public utility, takes the position that the substantive issues underlying these claims for equitable relief are moot, we conclude that the adversity required to satisfy Article III has dissipated and thus, our jurisdiction has ceased. We will therefore dismiss this appeal as moot. By this disposition, the district court decision in favor of the public utility continues to have legal effect and we will thus remand this matter with directions to the district court to consider the public utility's outstanding claims for damages and attorney's fees.
 
 I.
 A. Background--The NYSERDA case
 
 9
 Jersey Central Power and Light ("JCP & L") is a public utility incorporated under the laws of the State of New Jersey and is the owner of the Oyster Creek Nuclear Generating Station ("Oyster Creek") located in Lacey Township, New Jersey.[1]
 
 
 10
 In 1975, at a time when the nuclear industry assumed spent fissionable products could be recycled, Nuclear Fuel Services contracted to supply nuclear waste reprocessing services to JCP & L for spent fuel that was generated at Oyster Creek and to store that fuel at the Western New York Nuclear Service Center. The facility is owned by the New York State Energy Research and Development Authority ("NYSERDA"), and is located in West Valley, New York. Pursuant to this contractual arrangement, JCP & L transported 224 of its 980 spent fuel assemblies[2] generated at Oyster Creek to West Valley, New York. In September of 1976, however, Nuclear Fuel Services withdrew from the reprocessing business and the 224 spent fuel assemblies were never reprocessed. They simply remained in storage in the West Valley storage pool.
 
 
 11
 Due to a dispute between NYSERDA and JCP & L and certain other public utilities storing fuel at the West Valley facility, NYSERDA commenced an action in the United States District Court for the Western District of New York entitled New York State Energy Research and Development Authority v. Nuclear Fuel Services, Inc., Civ. No. 82-426 (W.D.N.Y.) ("the NYSERDA case") alleging liability for removal of spent fuel stored at the disposal and reprocessing center. The district court ruled that JCP & L would be a trespasser if NYSERDA's unequivocal demand for removal was made and ignored. New York State Energy Research and Development Authority v. Nuclear Fuel Services, 561 F.Supp. 954 (W.D.N.Y.1983).
 
 
 12
 Subsequently, NYSERDA indeed made an unequivocal demand for removal of JCP & L's spent fuel. On September 30, 1983 NYSERDA and JCP & L entered into a partial settlement agreement which was later incorporated into the October 14, 1983 order directing JCP & L to commence the removal of its 225 spent fuel assemblies from West Valley by October 1, 1984 and complete removal by May 31, 1985.[3] The shipment and transportation route of these 224 spent fuel assemblies from West Valley, New York to the Oyster Creek, New Jersey, facility, as well as their storage, has instigated further proceedings in the United States District Court for the District of New Jersey,[4] and underlies this appeal.
 
 
 13
 B. Jersey Central Power & Light v. The State of New Jersey, and Irwin I. Kimmelman, Attorney General of the State of New Jersey, No. 84-5883 ("The State Action")
 
 
 14
 In January 1984, JCP & L authorized Transnuclear, Inc. to begin inquiries with the states of New York, New Jersey and Pennsylvania regarding the routing of the spent fuel shipments within these states. JCP & L proposed a route leaving West Valley and proceeding east and then south through New York on the first day then cutting across the northeastern corner of Pennsylvania. Entry was initiated into New Jersey at the Delaware Water Gap and proceeded east then southeast through central New Jersey to Oyster Creek on the second day. The route required transportation along Interstate Highways, and the sequence of highways starting from West Valley was as follows: U.S. Route 219, Interstate 90 (I-90), I-481, I-81, I-380, I-80, I-287, I-95 (N.J. Turnpike), I-195 then local roads to Oyster Creek. JCP & L applied to the Nuclear Regulatory Commission ("NRC") for approval of this "northern route" in June and July 1984.
 
 
 15
 On September 18, 1984, JCP & L applied to the New Jersey Department of Environment Protection ("DEP") for a Certificate of Handling pursuant to the New Jersey Radiation Protection Act, N.J.S.A. Sec. 26:2D-18 et. seq., ("RPA") to authorize the shipment of spent nuclear fuel through New Jersey via the NRC proposed route. On September 26, 1984, JCP & L was notified that its proposed route for the return of the spent nuclear fuel to Oyster Creek was judged by the NRC to meet regulatory requirements set forth in 10 C.F.R. Sec. 73.37. However, on December 5, 1984, the DEP saw fit to designate an alternate "southern route."[5] The parties, however, were unable to agree as to the appropriate route and hence JCP & L brought suit against the State of New Jersey.
 
 
 16
 The complaint sought a declaration that certain provisions of the New Jersey Radiation Protection Act are invalid and consequently unenforceable as violative of the Supremacy and Commerce Clauses of the United States Constitution. Additionally, JCP & L sought to preliminarily and permanently enjoin enforcement of the statute and any other state statute or policy that would interfere with the transportation of the spent nuclear fuel. JCP & L also requested damages and attorney's fees.
 
 
 17
 On December 6, 1985, Judge Bissel conducted a hearing with respect to JCP & L's application for a Temporary Restraining Order. The district court denied that application but issued an Order to Show Cause and scheduled a consolidated hearing for December 24, 1984 to consider JCP & L's request for a preliminary injunction in conjunction with a trial on the merits, pursuant to Fed.R.Civ.P. 65(a)(2).
 
 
 18
 Judge Bissell rendered an oral opinion in which he narrowed the issues of the propriety of the state's conduct to a statutory context rather than a constitutional context. The substantive issue considered was whether the state properly designated an alternate route in accordance with HMTA regulations. He ruled that the state of New Jersey had not validly designated in accordance with the HMTA, an alternate route to that proposed by JCP & L and approved by the NRC, and that New Jersey's action was therefore inconsistent with the HMTA. The district court ordered that JCP & L immediately commence shipment of the spent fuel along the NRC approved route and that New Jersey was enjoined from interfering with such shipments and required to grant a Certificate of Handling. The district court, however, retained jurisdiction over JCP & L's claims for damages and attorney's fees.
 
 
 19
 On December 27, 1984, the district court issued its final judgment granting injunctive and declaratory relief and denied New Jersey's application for a stay pending appeal of the court's order. New Jersey noticed appeal on December 28, 1984, and subsequently applied to this Court for a stay pending the appeal of the injunctive order which this Court denied on January 3, 1985.
 
 II.
 
 20
 Having been advised by the parties as to the cessation of the shipping campaign and the present storage of the spent fuel rods at the Oyster Creek Nuclear facility, we must at the outset consider the issue of mootness.[6] We must ask if there exists a "subject matter upon which the judgment of the court can operate" to make a substantive determination on the merits. Ex Parte Baez, 177 U.S. 378, 390, 20 S.Ct. 673, 677, 44 L.Ed. 813 (1900).
 
 
 21
 As we noted in the related case, New Jersey Turnpike Authority v. Jersey Central Power and Light and General Public Utilities Nuclear, 772 F.2d 25 (3d Cir., 1985) ("the NJTA Action"), the central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occassion for meaningful relief. Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895). In the NJTA Action, we concluded that the completion of the shipping campaign divested this Court of Article III jurisdiction because it no longer presented a case or controversy susceptible to judicial resolution. We reasoned that since only injunctive relief was requested by the plaintiff, the New Jersey Turnpike Authority, and subsequent events made it clear that the wrongful conduct--the failure to comply with certain conditions prior to the shipment of the radioactive materials--could not reasonably be expected to recur (even where the offending conduct, by its nature, evades review), the case did not fall within the "capable of repetition, yet evading review" exception to mootness. See, e.g., Vitek v. Jones, 445 U.S. 480, 486-87, 100 S.Ct. 1254, 1260-61, 63 L.Ed.2d 552 (1980); St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 538 n. 7, 98 S.Ct. 2923, 2928 n. 7, 57 L.Ed.2d 932 (1978); United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203-04, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968); United States v. W.T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed.2d 1303 (1953).
 
 
 22
 The distinguishing feature in the instant case, however, is that several forms of relief were requested by the plaintiff, JCP & L, in its complaint and even if one of these requests subsequently becomes moot, this Court must still consider the viability of the remaining requests. See Standard Fashion Co. v. Magrane-Houston Co., 258 U.S. 346, 353, 42 S.Ct. 360, 361, 66 L.Ed. 653 (1922). The challenged activity in this instance is the State's interference with the succession of shipments along the NRC approved route and refusal to issue the proper state clearance documentation. Because the shipping campaign has come to an end, we must consider whether, should we decide the case in favor of the plaintiff, we can grant JCP & L any effectual relief whatever. Mills, 159 U.S. at 653, 16 S.Ct. at 133. The plaintiff, JCP & L, sought in its complaint not only injunctive and declaratory relief but also damages and attorney's fees.
 
 
 23
 Despite the defendant State's contention that this case falls within the "capable of repetition, yet evading review" exception to mootness, for substantially the same reasons stated in our opinion in the NJTA Action, we conclude that the claim for injunctive relief is moot.
 
 
 24
 Briefly stated, here the district court granted the injunctive relief sought by the complaining party, JCP & L, and permanently enjoined and restrained the State from interfering, obstructing or delaying the shipment of nuclear waste over the NRC approved route and further directed the State to issue the Certificate of Handling. Because the shipment has concluded via the NRC approved route, the alleged violation by the State has ceased. The offending conduct and thus the case for an injunction dissolved with the subsequent completion of this unique shipment, the factual aspects of which we have examined in more detail in the NJTA action.
 
 
 25
 We also have the duty to determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Super Tire Engineering Company v. McCorkle, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). And, employing the Super Tire analysis, since this case involves governmental action, we must assess whether the issues presented here are "capable of repetition, yet evading review," so that the complaining party is adversely affected by the government "without a chance of redress." See also Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).
 
 
 26
 Unlike Super Tire, the complaining party, JCP & L, takes the position that the case is moot--it is the government asserting that this matter falls within the "capable of repetition yet evading review exception." The challenged governmental activity--the alternate designation of a route--was contingent upon the shipment from the West Valley, New York Facility and the interrelationship of the various Interstate routes in New York & Pennsylvania.
 
 
 27
 We are of the mind that there is no reasonable expectation that it will recur. There is no demonstrated probability that the "same complaining party would be subjected to the same action again," Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (emphasis added). Despite the State's assertion of "continuing construction along I-287 until 1986", this obviously does not cast a "substantial adverse effect" on the interests of the complaining party. The complaining party, JCP & L, takes the position that this claim is also moot.
 
 
 28
 Thus, our conclusion of mootness as to the equitable claim of coercive relief is not drastically affected by the added claim for declaratory relief. A declaratory judgment is available only so long as there is an actual controversy among the parties. Declaratory Judgment Act, 28 U.S.C. 2201 (1982). The availability of declaratory relief will not always satisfy the constitutional requirement that the case or controversy be susceptible to judicial resolution; the concreteness of the factual situation and the adversity of the parties must remain considerations. Again, for the reasons expressed above and in our opinion in the NJTA Action, we are not persuaded that sufficient adversity remains as to this claim for relief, most notably due to the plaintiff's contention that this claim is moot.
 
 
 29
 While the more difficult analytical questions are presented by demands for injunctive and declaratory relief, the availability of damages or other monetary relief almost always avoids mootness. Ellis v. Brotherhood of Railway Airline & Steamship Clerks, 466 U.S. 435, 104 S.Ct. 1883, 1889, 80 L.Ed.2d 428 (1984); Powell v. McCormack, 395 U.S. 486, 496-97, 89 S.Ct. 1944, 1950-51, 23 L.Ed.2d 491 (1969); Galda v. Bloustein, 686 F.2d 159 (3d Cir.1982). Damages should be denied on the merits, not on the grounds of mootness. 13A C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure Sec. 3533.3 (1975 and Supp.1983) 262.
 
 
 30
 We recognize that there is clearly a damages claim in this case because JCP & L alleged damages in its complaint, but the district court ordered that "all claims by plaintiffs for damages and attorneys fees are reserved for future determination." Appendix ("App.") at 5a, 43a, 239a. While it is settled that the mooting of claims for injunctive and declaratory relief does not always moot an entire case in which claims for damages remain, Flagg Brothers v. Brooks, 436 U.S. 149, 154 n. 3, 98 S.Ct. 1729, 1732 n. 3, 56 L.Ed.2d 185 (1978); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 7-9, 98 S.Ct. 1554, 1559-60, 56 L.Ed.2d 30 (1978), we must evaluate whether the damages claim in this case is properly before us. If it is, a viable claim for damages is usually sufficient to preserve the saliency of an action, and we can proceed to address the merits irrespective of the mootness of the injunctive relief. If not, we should dismiss this appeal as moot.
 
 
 31
 We believe that the district court held JCP & L's damages and attorney's fees claims in abeyance pending our determination of the injunctive and declaratory relief requested for two reasons. First, the order of the district court is expressly entitled "Final Judgment as to Declaratory and Injunctive Relief". There was no determination made by the district court with respect to damages or attorney's fees. Instead, the district court retained jurisdiction over those claims and entered Rule 65(a)(2) judgment as to the injunctive and declaratory relief alone. The damages and attorney's fees claims were expressly reserved for future determination. Second, JCP & L asserts that the issues raised on appeal are moot. Since it is the complaining party to whom relief was afforded below, this is certainly of some significance. While this assertion of mootness could conceivably be construed as a waiver of the monetary claims, given the wording of the order appealed from, it is certainly not clear from the facts that it is. Even if it is, it is not clear that it is an intentional waiver.
 
 
 32
 We therefore hold that the appropriate disposition of this appeal from injunctive and declaratory relief is dismissal of the appeal as moot. This results in the lower court's decision continuing to have legal force and allows the district court to consider on remand the outstanding claims of damages and attorney's fees.
 
 
 33
 Since we recognize that the issue is a close one and that the Supreme Court could disagree with our mootness holding, we note that, from a practical standpoint, our resolution on the merits would have the same end result because we would affirm the district court's grant of equitable relief in favor of JCP & L on the substantive issue of whether New Jersey had properly designated an alternate route for shipment of the spent fuel. We would agree with Judge Bissell's extensive and persuasive analysis that New Jersey's action constituted a state "routing rule" inconsistent with the HMTA because (1) it would have prohibited the transportation of spent fuel between two points in New Jersey without providing an alternate route running between those same two points, 49 C.F.R. Sec. 177, App. A.III.1; and (2) because it did not ensure reasonable continuity between jurisdictions, 49 C.F.R. Sec. 177, App. A.III.2(d). Thus, even were we to reach the merits, we would still conclude that the outstanding claims for damages and attorney's fees mandate our remanding the matter to the district court for further consideration.
 
 III.
 
 34
 For the foregoing reasons, we dismiss the appeal as moot and remand the instant matter to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Clarence C. Newcomer, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Oyster Creek is a federally licensed "utilization facility" as defined by the Atomic Energy Act of 1954 ("AEA"), 42 U.S.C. Sec. 2014(cc) (1982) and, as such, is authorized to generate nuclear energy and also to receive and store on-site spent nuclear fuel ("spent fuel"). Spent fuel is radioactive material and constitutes "hazardous materials" as defined in the Hazardous Materials Transportation Act ("HMTA"), 49 U.S.C. Secs. 1802(2) (1982)
 
 
 [2]
 The spent fuel consisted of uranium dioxide pellets contained in long, sealed metal tubes, approximately fourteen feet in length and one-half inch in diameter. A bundle of these tubes, weighing about one-third of a ton, constitutes a "fuel assembly."
 
 
 [3]
 The United States District Court for the Western District of New York ordered the removal of JCP & L's spent fuel from West Valley in connection with the implementation by the United States Department of Energy of the West Valley Demonstration Project Act, Pub.L. No. 96-368, 92 Stat. 1347 (1980), which is designed to develop solutions to the nation's severe nuclear waste disposal problem
 The United States Department of Energy has taken possession of the West Valley facility for a demonstration project involving the preparation of radioactive waste for disposal. NYSERDA remains the owner. The West Valley Demonstration Project is intended to develop and demonstrate solidification techniques which can be used to prepare high-level radioactive waste for disposal in accordance with the policy objectives of the Nuclear Waste Policy Act of 1982, 42 U.S.C. Secs. 10101-10226 (1982). The continued storage of the 224 spent fuel rods at the West Valley facility impacted on the implementation of the West Valley Demonstration Project because completion of the project assumes removal of all spent fuel from the storage pool.
 
 
 [4]
 The transportation of the spent fuel in issue here has generated the related case: New Jersey Turnpike Authority v. Jersey Central Power & Light and General Public Utilities Nuclear Corporation, No. 85-5131 ("The NJTA Action "). The storage of the nuclear waste is the subject of dispute in Jersey Central Power & Light Company v. Township of Lacey, Nos. 84-5652 and 84-5763 ("The Township of Lacey Action ")
 
 
 [5]
 The NRC proposed route was examined by the New Jersey Department of Transportation and the New Jersey State Police. It was concluded that the route was unsatisfactory because of site-specific conditions on I-287. Specifically, state authorities concluded that traffic volume would be exacerbated due to a major reconstruction project underway to resurface bridges and would result in closure of all northbound lanes, which would greatly increase traffic congestion and delays
 The route referred to as the "southern route" was considered by New Jersey authorities be a satisfactory alternative. It required entry into New Jersey at a more southern point than on the NRC approved route, and designated two routes through Pennsylvania to connect with this point of entry. The southern route proceeds east to I-95, north to I-195, east on I-195 and then by local roads to Oyster Creek. Pennsylvania officials objected to the southern route and preferred the northern route. Neither of New Jersey's proposed southern routes were approved by the NRC.
 
 
 [6]
 We directed the parties to submit supplemental letter briefs subsequent to oral argument in response to our inquiry as to whether the shipments had occurred and if so, whether this matter is rendered moot by the change in circumstances. We thus raise sua sponte whether this suit presents a live case or controversy. St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 537, 98 S.Ct. 2923, 2927, 57 L.Ed.2d 932 (1978); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 7-8, 98 S.Ct. 1554, 1559-60, 56 L.Ed.2d 30 (1978)
 See also our discussion of mootness in the related cases: Jersey Central Power & Light Company v. Township of Lacey, Nos. 84-5652 and 84-5763, and New Jersey Turnpike Authority v. Jersey Central Power & Light and General Public Utilities Nuclear, No. 85-5131.