**Jacqueline MOORE, Plaintiff,**

v.

**Joseph D. LEHMAN, et al., Defendants.**

**Civil Action No. 4:CV–93–0550.**

United States District Court,
M.D. Pennsylvania.

Aug. 22, 1996.

Joseph R. DeCristopher, Williamsport, PA, Joseph R. DeCristopher, Scott L. Rudnick, Susquehanna Legal Services, Sunbury, PA, Scott L. Rudnick, Lewisburg Prison Project, Lewisburg, PA, for Jacqueline Moore, plaintiff.

Amy Zapp, Office of the Attorney General, Harrisburg, PA, Jacqueline E. Jackson–DeGarcia, PA Attorney General's Office, Harrisburg, PA, for Joseph Lehman, Mary Leftridge–Byrd, David E. Patton, John Smith, Danny in his official and individual capacity, Nestor, Ed Bennett, John Savage, Wayne Rolley, Musser, defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before the Court are the Defendants' Motion for Partial Summary Judgment (Doc. 64) and the Plaintiff's Cross Motion for Partial Summary Judgment (Doc. 80). These motions deal with the issues of whether this Court has jurisdiction to hear this case and whether the attorney visitation policy at the State Correctional Institute at Muncy (hereinafter "SCI–Muncy") is unconstitutional as violating the inmates' right to access to the courts. For the reasons as set forth *infra*, we shall deny the Defendants' Motion for Summary Judgment (Doc. 64). We shall also deny the Plaintiff's Cross Motion for Partial Summary Judgment (Doc. 80).

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are well known to all parties involved; however, for purposes of addressing the present motions, a brief recitation of the necessary facts is as follows: On or about April 13, 1993, the Plaintiff, Jacqueline Moore, initiated the present complaint on behalf of herself and other inmates similarly situation at SCI–Muncy [1] claiming, *inter alia,* that the attorney visitation policy at SCI–Muncy violated their constitutional right to access to the courts.[2] On two (2) separate occasions, Plaintiff Moore's attorneys were not allowed to visit her, although they contend that their names were either previously placed upon Plaintiff Moore's visitor's list or that they were previously permitted to visit Plaintiff Moore when their names did not appear on Plaintiff Moore's visitor's list. (Doc. 86, App.A1, 23–31).

When Defendant Byrd became the superintendent of SCI–Muncy, she implemented strict adherence to this policy. (Doc. 86, App. E, 12). Defendant Byrd did not change the format of the policy; rather, she changed the application of the policy by strictly adhering to it. (Doc. 86, App. A1, 12–14). Additionally, on or about June, 1991, the procedure at SCI–Muncy where an inmate places a prospective visitors' name on her visitor's list was changed to computerized listing. (Doc. 86, App. A1, 20–22). This change appears to have created a delay from the time which the inmate actually places the name of the prospective visitor on the hard copy of the inmate's visitors' list to the time which the hard copy of the inmate's visitors' list is computerized and entered into SCI–Muncy's computer system. Deposition testimony of Defendant Byrd reveals that although Plaintiff Moore's attorneys' names were on the hard copy list, they were not on the official computerized list. (Doc. 86, App. E, 12), and therefore were denied visitation with their client. However, once this problem was rectified, Plaintiff Moore's attorneys were allowed to visit with her.

On or about December 28, 1995, the Defendants filed the present Motion for Partial Summary Judgment (Doc. 64), which resulted in the Plaintiff filing an answer to said motion (Doc. 80) and cross Motion for Partial Summary Judgment (Doc. 80).

### Standard of Review

Pursuant to Fed.R.Civ.P. 56(c), a motion for summary judgment will only be granted if there is no genuine issue of material fact and if the moving party is entitled to relief as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is "material" if proof of its existence or nonexistence would effect the outcome of the lawsuit under the applicable law in the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir.1987).

In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir. 1988). A moving party is entitled to a judgment as a matter of law if the nonmoving party does not make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Once the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), the nonmoving party is required by Fed.R.Civ.P. 56(e) to go be-

---

1. This Court on or about September 17, 1993, certified the class pursuant to Fed.R.Civ.P. 23(b). (Doc. 27). However, the Court recently decertified the class for the reasons as set forth in our Memorandum and Order dated July 15, 1996. (Doc. 98). As such, the Plaintiff's visitation claim now only pertains to Plaintiff Jacqueline Moore.

2. Pursuant to the attorney visitation policy, the name(s) of an inmate's attorney(s) must be placed on the inmate's visitation list prior to the attorney(s)' visit. If the name of the attorney(s) is not on that list, then the attorney(s) is not allowed to visit or meet with the inmate. DC Adm. 812; 17 Pa.Code § 93.3(a).

yond the pleadings by way of affidavits, depositions or answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must proffer evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. CIT Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir.1987).

■ When reviewing a motion for summary judgment, the court must decide whether or not there is a genuine issue of material fact which must be resolved at trial or whether the evidence is so one-sided that one party will prevail over the other. *Groff v. Continental Insurance Co.,* 741 F.Supp. 541 (E.D.Pa.1990). "Where factual controversies exist, disputes over material facts that might affect the outcome of the suit under the governing law will probably preclude the entry of summary judgment." *Metro Transportation Co. v. North Star Reinsurance Co.,* 912 F.2d 672, 678 (3d. Cir. 1990).

## I.  Defendants' Jurisdiction Argument

■ The Defendants contend that this Court lacks jurisdiction to hear this case, based upon the consent decree entered into by the parties of *Imprisoned Citizens Union v. Shapp et. al.,* Nos. 70–3054, 71–513, 71–1006, 70–2545 & 72–2060 (E.D.Pa.) (hereinafter *"Shapp"*).

The *Shapp* decision entailed five inmate lawsuits filed in the United States District Court for the Eastern District of Pennsylvania.  The *Shapp* plaintiffs, inmates of six Pennsylvania prisons including SCI–Muncy, sought equitable and monetary relief in regards to several constitutional claims which challenged the conditions of confinement at said Pennsylvania prisons.  One of these challenges dealt with the Department of Correction's (hereinafter "DOC") visitation policy.

■ The *Shapp* litigation culminated in a consent decree which addressed all of the claims of the plaintiffs.  With respect to the DOC visitation policy, the *Shapp* consent decree implemented three changes in the visitation policy.[3]  The United States District Court for the Eastern District of Pennsylvania, as the court which approved the decree, retained jurisdiction in that matter.[4]

> The scope of a consent decree must be discerned within its four (4) corners.  The goal of the task of interpreting a contract is to ascertain the intent of the parties as manifested by the language of the written instrument.  Consequently, a court may examine the circumstances surrounding the consent decree, including the context in which the parties were operating, without departure from the so-called four (4) corners rule.

*Beehler v. Jeffes,* 664 F.Supp. 931 (M.D.Pa. 1986) (Nealon, J.) (internal citations omitted) (quoting *New York State Association for Retarded Children, Inc. v. Carey,* 596 F.2d 27, 37 (2d. Cir.), *cert. denied, sub. nom, Coughlin v. New York State Association for Retarded Children, Inc.,* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979)).

---

**3.** The *Shapp* decree, in relation to the visitation policy, states in relevant part:

XIV.  *VISITING PRIVILEGES*
Bureau of Correction's Administrative Directive BC–ADM 812, Resident Visiting Privileges, shall be amended as follows:
A.  Specific provisions will be added to enable residents to visit with visitors not on the residents' approved list who may come form substantial distances at infrequent intervals to visit the resident.
B.  The number of approved visitors which each resident may designate in advance shall be increased to twenty (20).  Residents who can show that they have more than twenty regular visitors may add additional names to their approved lists.  Members of a single family living at the same address shall continue to be counted as one visitor for this purpose.
C.  The provisions governing frequency of visits shall be amended to allow visits at least as frequently as one per week.  Additional visits may be permitted unless the resident's program status makes it impracticable.

**4.** The *Shapp* decree, as it pertains to the continuing jurisdiction of the court, states in relevant part:

XXVII.  *CONTINUING JURISDICTION OF THE COURT*
The court retains jurisdiction of this action.

■ While this Court has refused to entertain matters concerning the *Shapp* consent decree in other cases, *see Howard v. Fulcomer*, 89–CV–0286 (M.D.Pa.) (Muir, J.); *Beehler v. Jeffes, supra,* this Court has also held that individual claims concerning the same issues which had not been addressed in the *Shapp* case may be brought before this Court. *See Lockey v. Fulcomer*, 85–CV–1325 (M.D.Pa. 1985) (Rambo, J.); *Beehler*, 664 F.Supp. at 938. By Memorandum and Order dated July 15, 1996, this Court decertified the class which was proceeding on the visitation claim. The only attorney visitation claim which remains is that of Plaintiff Jacqueline Moore. Furthermore, the Plaintiff's claim not only is an individual's claim that the attorney visitation policy itself denies one access to the courts, but also is a claim that the attorney visitation policy *as applied* by SCI–Muncy denies one access to the courts. Neither of these issues was previously addressed in the *Shapp* decree. We therefore retain jurisdiction in this matter and shall deny the Defendants' Motion for Partial Summary Judgment.[5]

## II. Plaintiff's Cross Motion for Partial Summary Judgment

■ Contained within the Plaintiff's opposition brief to the Defendants' Motion for Partial Summary Judgment was a cross Motion for Summary Judgment (Doc. 80). The Plaintiff seeks partial summary judgment on the issue that the attorney visitation policy itself denied the Plaintiff access to the courts, and that there is no rational basis for either the policy itself or the application thereof by

SCI–Muncy officials[6]. We disagree as to both of the Plaintiff's views.[7]

Prisoners have a well-established constitutional due process right to access to the courts. It is fundamental that access to the courts for the purpose of challenging confinement or violations of civil rights may not be denied or obstructed.... Although the right of court access is not absolute and may be curtailed to accommodate institutional security interests, the burden rests with the state to demonstrate the adequacy of the methods it chooses in extending this right.

*Tillery v. Owens*, 719 F.Supp. 1256, 1281–82 (W.D.Pa.1989) (internal citations omitted).

■ We state at the onset that every prisoner is guaranteed "meaningful access to the courts." *Bounds v. Smith*, 430 U.S. 817, 823, 97 S.Ct. 1491, 1495–96, 52 L.Ed.2d 72 (1977). *Accord, Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Casey v. Lewis*, 4 F.3d 1516 (9th Cir.1993); *Young v. Larkin*, 871 F.Supp. 772 (M.D.Pa.1994) (Vanaskie, J.). This, contrary to the Defendants' interpretation, includes the inmate's visitation with his counsel. *Mann v. Reynolds*, 46 F.3d 1055, 1061 (10th Cir.1995) (quoting *Ching v. Lewis*, 895 F.2d 608, 610 (9th Cir.1990)). However, this right does not necessarily entail unfettered or totally unrestricted visitation with counsel, for it must yield to legitimate penological interests. *See Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir.1987).

■ Plaintiff Moore contends that the analysis of *Turner v. Safley, supra,* is warranted in this matter; the Defendants claim

---

**5.** The Plaintiff asserts that this Court must retain jurisdiction because "it impliedly assumed jurisdiction" by certifying the class. We wholly disagree with this argument. Although a court may assume jurisdiction at the commencement of the case, if at any time during the litigation it is discovered that the court lacks subject matter jurisdiction, that court cannot continue to entertain the case, and the case will be dismissed or transferred a court which has proper jurisdiction.

**6.** The Plaintiff's visits did not occur despite the fact that Plaintiff Moore's attorneys were permitted to visit on prior occasions even though their names were not previously on the list. The Defendants state that the prior visits were an over-

sight. Although these visits were not permitted after Plaintiff Moore was allegedly beaten, the complaint does not fashion the access to the courts claim as a retaliatory denial of visitation. Therefore, the Court undertakes an analysis of general denial of access to the courts, as opposed to a retaliatory claim.

**7.** We state at the onset that the Plaintiff's personal access to the courts claim is not moot because of her release from incarceration, primarily for the reason that Plaintiff Moore is seeking monetary relief as well as equitable and declaratory relief. *See Board of Pardons v. Allen*, 482 U.S. 369, 370 n. 1, 107 S.Ct. 2415, 2417 n. 1, 96 L.Ed.2d 303 (1987); *Jersey Central Power & Light Co. v. New Jersey*, 772 F.2d 35, 41 (3d Cir.1985).

that an analysis of *Bounds v. Smith, supra,* controls this claim. Under either analysis, the outcome is the same. Neither the attorney visitation policy in general nor the application thereof by SCI–Muncy officials violate Plaintiff Moore's right to access to the courts.

### The Attorney Visitation Policy of SCI–Muncy

#### a) *Bounds v. Smith* analysis

As previously stated, the right of access to the courts must be reasonably related to legitimate penological interests. Defendants at oral arguments stated that the Department of Corrections has a specific penological interest in placing such limitations on attorney-inmate visitation due to the risk of attorney assisted escapes or violations of other DOC policies, such as smuggling in of contraband, controlled substances or other prohibited items. The affidavit of Defendant Byrd, submitted in opposition to the Plaintiff's cross Motion for Partial Summary Judgment, speaks of certain security and safety problems which pose a serious problem to the administration of SCI–Muncy. (Doc. 90, Exh. A, pp. 2–4, ¶¶ 2–12). We agree with the Defendants on this point. Although neither party has produced any evidence or specific instances to prove of refute this claim, we feel that the possibility, and not the probability, of such an occurrence constitutes a legitimate penological interest which would justify the general attorney visitation policy at SCI–Muncy.[8]

Under the alternative analysis of *Turner v. Safley, supra,* the outcome is still the same.

#### b) *Turner v. Safley* analysis

The Plaintiffs analyze this issue under the four-prong test of *Turner v. Safley, supra.* Pursuant to this test, in order for a court to determine whether the prison regulation is valid, the court must consider:

(1) whether the prison regulation is rationally related to he governmental interest at stake;

(2) whether there are alternative means available to the inmate for exercising the constitutionally protected right;

(3) the impact accommodating the asserted right will have on guards and other inmates and the allocation of prison ·resources generally; and

(4) the absence of ready alternatives.

*Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62.

In the present case, the attorney visitation policy passes constitutional muster. The security and safety risks which justify the policy are legitimate interests; the policy of requiring that an attorney's name be placed on the visitor's inmate visitors list is rationally related to such an interest, for it tracks the comings and goings of visitors from the outside.

Defendant Byrd through her affidavit shows this Court that there are alternative means which an inmate can communicate with her attorney. (Doc. 90, Exh. A, p. 4 ¶ 13). Furthermore, although phone calls are prohibited for inmates in the Restrictive Housing Unit, Defendant Byrd states that "exceptions can be made if circumstances dictate." (*Id.*).

The Plaintiff suggests to the Court several alternative means of enforcing the attorney visitation policy. Such suggestions include having the security guard adding the attorney's name on the computerized list after the attorney clears a security check and is accepted by the inmate. Plaintiff's counsel suggests that since the security guards must check the computer list any way, this "would not impact on the resources of SCI–Muncy in any significant way." (Doc. 81, p. 13). Another suggestion was that the inmate complete the visitation form upon arrival of the attorney at the gates, and not prior to said arrival.

---

8. At oral arguments, counsel for Plaintiff created the suggestion to the Court that such occurrences do not happen. However, the reality is that such occurrences do occur, even if on an infrequent basis. *See e.g.* John Flynn Rooney, *Lawyer Convicted For Aiding Inmate's Escape Will Appeal,* CHICAGO DAILY LAW BULLETIN, April 30, 1996, vol. 142 no. 86.

In the Court's opinion, such alternatives are not feasible to the administration and internal workings of a prison. Such suggested alternatives call into question the weighing of time versus utility and the feasibility of such alternatives. The decision of formulating alternative methods should be left up to the discretion of the prison officials, as those officials possess the best judgment in such matters. *See Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974).

Furthermore, such alternatives would, in this Court's opinion, create a substantial burden on the Defendants in performing such suggested methods. Theses methods shift a burden onto the Defendants in affording inmate the choice of accepting or denying the visit.[9]

The attorney visitation policy does provide exceptions in special circumstances. *See* DC–ADM 812. Furthermore, phone calls and written communication with attorneys are permitted. (Doc. 90, Exh. A, p. 4 ¶ 13). These alternatives ensure that the inmates are not being denied access to the courts via their attorney.

### The Attorney Visitation Policy As Applied at SCI–Muncy

■ The Plaintiff also contends that the manner in which the Defendants are implementing the attorney visitation policy is unconstitutional as prohibiting Plaintiff Moore access to the courts via her attorneys.

When Defendant Byrd became the superintendent of SCI–Muncy, she implemented strict adherence to this policy. (Doc. 86, App. E, 12). Defendant Byrd did not change the format of the policy; rather, she changed the application of the policy by strictly adhering to it. (Doc. 86, App. A1, 12–14). Additionally, on or about June, 1991, the procedure at SCI–Muncy where an inmate places a prospective visitors' name on her visitor's list was changed to computerized listing. (Doc. 86, App. A1, 20–22). This change appears to have created a delay from the time which the inmate actually places the name of the prospective visitor on the hard copy of the inmate's visitors' list to the time which the hard copy of the inmate's visitors' list is computerized and entered into SCI–Muncy's computer system.

Defendant Byrd's deposition testimony reveals that there was no change in the policy itself, just the application thereof, as there previously was a rather lax enforcement of the policy:

> As I understood—as I understood the question whenever the question was posed about visits to the institution, my adherence to the policy was new to the extent that apparently I've been told an informal relationship of some sort existed where an attorney would perhaps call the superintendent or her assistant to gain entrance to the institution absent the requirement of being listed on the inmate's visitor's list.

(Doc. 82, Exh. A1, p. 13).

Defendant Patton testified at his deposition that Defendant Byrd "would no longer be making exceptions for attorneys to visit. That attorneys would be required to follow the policies as everyone else." (Doc. 82, Exh. E, p. 12).

■ It appears that what the Plaintiff is really aggrieved by is not the application of the policy by Defendant Byrd itself, but rather the decision to stop allowing exceptions and to revisit the original visitation policy, a policy which is rationally related to significant penological interests. In essence, Defendant Byrd "drew a line" of strict adherence to the visitation policy. "So long as reasonable and effective means of communication remain open and no discrimination in terms of content is involved, we believe that,

---

9. For example, under the Plaintiff's suggested alternative, the inmate would receive notice from the official that they have a calling visitor, and would be asked if the inmate would like them to be added to their visitor's list. The inmate then has the opportunity of accepting or denying the visitor, and must communicate her choice to the officials, who must then do the paper work themselves. Prisons are not expected to be run like country clubs or hotels, *see Williams v. Bennett*, 689 F.2d 1370, 1385 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Rhodes v. Chapman*, 452 U.S. 337, 354, 101 S.Ct. 2392, 2403, 69 L.Ed.2d 59 (1981) (Brennan, J. concurring), and such freedom of choice must yield to the penological interests of ensuring the safety and security not only of the prison officials, but also the inmates themselves.

in drawing such lines, 'prison officials must be accorded latitude.'" *Pell v. Procunier,* 417 U.S. 817, 826, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974).

■■■ The Plaintiff's argument also implies that the transition from the hard paper to computer system listing and the time necessary for entering the paper list into the computer also plays a role in the denial of access to the courts claim. We decline to second guess these internal workings of a state correctional facility, for the policy itself is valid. The avenue which the administration chooses to utilize in carrying out its regulations is best left to the discretion of the administration. However, we do take this opportunity to comment that such a delay which the Plaintiff is said to have incurred does not constitute an injury for an access to the courts claim. *See Peterkin v. Jeffes,* 855 F.2d 1021, 1039 (3d. Cir.1988) (quoting *Hudson v. Robinson,* 678 F.2d 462, 466 (3d. Cir. 1982) (where the court held that there must be an actual denial of access to the courts, and not a delay in gaining access to the courts)). *Compare Lewis v. Casey,* —— U.S. ——, ——, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996). Plaintiff Moore was permitted to visit with her attorneys once the problem was rectified, and her complaint was filed within the prescribed time period of the statute of limitations.

■■■ While we understand the Plaintiff's frustration and grievance, the Plaintiff must understand that SCI–Muncy has over 900 inmates and that the administration has the duty and burden of running an efficient prison system which does not violate the inmates' constitutional rights. And so long as the regulations enforced are rationally related to a penological interest and no constitutional violation occurs because of the regulation, we leave the choice of how to implement that prisons regulation up to the discretion of the prison officials. "The role of the courts ... is to enforce constitutional standards and to protect the constitutional rights of prisoners. But this role does not include 'second-guessing prison administrators or supervising prison administration', or becoming 'enmeshed in the minutiae of prison administrators.'" *Tillery v. Owens,* 719 F.Supp. 1256, 1261 (W.D.Pa.1989) (internal citations omitted). All inmates must be cognizant and understanding of this fact, to the extent that the regulations do not constitute a detrimental impact on the attorney-client relationship. *See e.g. Dreher v. Sielaff,* 636 F.2d 1141, 1144 (7th Cir.1980).

## CONCLUSION

Based upon the foregoing reasons, we shall deny the Defendants' Motion for Partial Summary Judgment (Doc. 64). We shall also deny the Plaintiff's cross motion for Partial Summary Judgment (Doc. 80). An appropriate Order is attached.

## AMENDED ORDER

NOW, THIS 11th DAY OF September, 1996, the Order entered in this case on August 22, 1996 is hereby amended to read as follows:

1. The Plaintiff's Motion for Partial Summary Judgment (Doc. # 80) on the issue of "access to the Courts" is hereby denied.

2. The Defendant's Motion for Partial Summary Judgment (Doc. # 64) as it pertains to the "issue of preclusion in light of prior litigation" and that this Court "lacks jurisdiction to hear or decide this claim" is denied.

3. The Defendant's Motion for Partial Summary Judgment (Doc. # 64) is granted as it pertains to the issue of "access to the Courts".

4. As a result of these rulings we have determined that the Plaintiff has no actionable constitutional claim involving the visitation policy or the application thereof of SCI–Muncy because we have found neither the attorney visitation policy in general nor the application of the policy by the SCI–Muncy officials violated Plaintiff's right of access to the Courts. Therefore, the remaining issue in this case is the Plaintiff's claim of violation of her 8th Amendment right to be free from cruel and unusual punishment.

5. This Order disposes of Documents 64 and 80.

6. The Clerk of Court is directed to mark the docket sheet accordingly.