**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2968
_____

NICHOLAS A. REITER, II,
                    Appellant

v.

WASHINGTON MUTUAL BANK; WELLS FARGO BANK;
COURT OF COMMON PLEAS, RULING OF SUMARY JUDGMENT
AND POSSIBLE MISMANAGEMENT BY PROTHONOTARY'S OFFICE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-10-cv-02192)
District Judge:  Honorable Robert F. Kelly
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 21, 2011
Before:  AMBRO, FISHER and NYGAARD, Circuit Judges

(Opinion filed: October 26, 2011)
_____

OPINION
_____

PER CURIAM

        Nicholas A. Reiter, II, appeals the dismissal of his suit for lack of subject matter

jurisdiction.  We will affirm.

## I. Background

On May 12, 2010, Reiter filed in the United States District Court for the Eastern District of Pennsylvania a complaint against "Washington Mutual Bank" (WaMu), "Wells Fargo Bank" (Wells Fargo), and "Court of Common Pleas Ruling of Summary Judgment and Possible Mismanagement by Prothonotary's Office Civil Division Bucks County Doylestown, PA 18901." (DC dkt #1, pg. 1.) He described the third entity as an adverse ruling in his state court mortgage foreclosure proceedings. Reiter claimed that he was denied due process during the state proceedings, as evidenced by the fact that WaMu was granted oral argument while his own request for oral argument was denied. (DC dkt #1, pg. 3.) Reiter also claimed that "a judgment was placed on [his] credit report before a judgment was even made" in the case. (DC dkt #1, pg. 4.) For relief, Reiter asked the District Court to "[o]verturn" the judgment in the state proceedings. (DC dkt #1, pg. 5.)

Reiter's complaint also included a motion for emergency injunctive relief. (DC dkt #1, pg. 1) ("I am here today to seek an Emergency Injunction to Permanently Stop the Pending Sheriff's Sale of my house which is due to commence this Friday, May 14th 2010"). Reiter claimed that an injunction was necessary because any purchaser of the property would be unwittingly "put in harm['s] way," given that "[t]he house is not structurally sound; the house **is** ridden with mold, a collapsing roof, ceiling cave-ins of the kitchen, bathroom, and middle bedroom." (DC dkt #1, pgs. 1-2.)

By order entered May 13, 2010, the District Court denied, pursuant to the Anti-Injunction Act (AIA), 28 U.S.C. § 2283, Reiter's request for emergency injunctive relief.

The District Court reasoned that the AIA "prohibits a federal court from enjoining a state court proceeding, including a sheriff's sale, unless one of the narrow exceptions to the Act applies." (DC dkt #2, pg. 1.) The District Court concluded that "[n]one of the exceptions apply to the facts of the instant case." (DC dkt #2, pg. 1.)

Five months later, the District Court dismissed Reiter's complaint without prejudice for failure to prosecute.[1] Reiter's motion for reconsideration was granted, and thereafter he was afforded substantial time to file an amended complaint in order to prosecute his case. On June 10, 2011, Reiter filed an amended complaint against the same three defendants that were named in the initial complaint. The amended complaint: reasserted with great elaboration Reiter's constitutional challenges to the state foreclosure proceedings; included a facial challenge to the constitutionality of the AIA, and noted that Reiter had at some point filed a Chapter 13 bankruptcy petition in order to halt the sale of his residence. In addition, Reiter requested both a jury trial and that his complaint and summons be delivered to the defendants by a federal marshal. (DC dkt #13, pgs. 1-2.)[2]

---

[1] The real property upon which Reiter's home was located in Bensalem, Pennsylvania, was sold to Wells Fargo on September 10, 2010. The deed bearing Wells Fargo's name was recorded on October 20, 2010. See Wells Fargo Bank, NA v. Shadoe, Case No. 2004-03050 (C.C.P. Bucks County), available at http://propublic.co.bucks.pa.us/PSI/Viewer/Detail.aspx?oq=aWQ9MjQwMzA1MCZlbnRpdHk9Q2FzZQ%3d%3d (last visited September 26, 2011).

[2] Two weeks later, Reiter filed a motion that both repeated his request for service by a federal marshal and resurrected his request to enjoin the sheriff's sale of his residence.

3

By order entered July 5, 2011, the District Court denied Reiter's pending motions and dismissed his case. The District Court determined that it was "unable to grant the relief requested . . . under the Rooker-Feldman doctrine," which precludes direct appellate review of state court judgments by federal courts other than the United States Supreme Court. The District Court found Rooker-Feldman applicable for two reasons: (1) because Reiter's "challenge against the mortgage foreclosure was actually litigated in the Bucks County Court of Common Pleas prior to filing the federal court action and [Reiter] lost"; and (2) because Reiter's "constitutional claims are inextricably intertwined with the state court adjudications." Reiter timely appealed.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291 to review the July 5, 2011 judgment of the District Court. "We exercise de novo review over questions of subject matter jurisdiction," Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 163-64 (3d Cir. 2010), including the question of whether a district court properly applied Rooker-Feldman.[3]

---

[3] The District Court did not address Reiter's facial constitutional challenge to the AIA. Nevertheless, Reiter does not press this claim on appeal, so it is waived. Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court"). In addition, to the extent Reiter's brief contains a challenge to the District Court's May 13, 2010 order denying enjoinment of the sheriff's sale, we find that such a challenge has been rendered moot by that sale. See Jersey Cent. Power & Light Co. v. State of N.J., 772 F.2d 35, 39 (3d Cir. 1985) ("the central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief").

III. Discussion

"The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. 459, 460 (2006) (per curiam) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). "Breaking down the holding of Exxon Mobil," we concluded in Great Western Mining that "there are four requirements that must be met for the Rooker-Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state court judgments." 615 F.3d at 166 (citation omitted). "The second and fourth requirements," we stated, "are the key to determining whether a federal suit presents an independent, non-barred claim." Id.

Here, we agree with the District Court that it lacked subject matter jurisdiction to entertain Reiter's claims inasmuch as they clearly challenged and invited federal court review of the adverse state court judgment rendered prior to Reiter's initiation of federal civil litigation on May 12, 2010.[4] We are sympathetic to Reiter's apparent confusion over

---

4 Nevertheless, we are concerned by one aspect of the District Court's reasoning. In addition to distilling the four requirements for application of the Rooker-Feldman doctrine, Great Western Mining made clear that "[t]he phrase 'inextricably intertwined'"—which had played a significant role in our pre-Exxon Mobil formulation of the doctrine—"does not create an additional legal test or expand the scope of Rooker-Feldman beyond challenges to state-court judgments." 615 F.3d at 170. Thus, the District Court's second stated reason for applying Rooker-Feldman in its July 5, 2011

how to properly litigate his challenges to the state court judgment at issue and we note that if Reiter wanted federal court review of the state court judgment in his mortgage foreclosure proceedings, he should have traveled the following course:  an appeal as of right to the Superior Court of Pennsylvania, followed—if relief was denied at that intermediate stage—by requests for discretionary review from the Pennsylvania and United States Supreme Courts.  He took none of these actions.  Cf. In re Knapper, 407 F.3d 573, 579 (3d Cir. 2005) ("Knapper never went into state court to challenge the proceedings there, or to attempt to have the foreclosure judgments stricken or opened").

## IV.  Conclusion

For the reasons given in this opinion, the judgment of the District Court is affirmed.  Reiter's "request for emergency injunction" is denied.

---

decision—"Plaintiff's constitutional claims are inextricably intertwined with the state court adjudications"—was either incorrect (to the extent it was provided as an independent basis for dismissal) or unnecessary (to the extent it was provided as support for the District Court's initial justification for application of the doctrine).

6